**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

IN RE:   UNITED FURNITURE INDUSTRIES, INC.         CASE NO. 22-13422-SDM
                                                   CHAPTER 7

**RENASANT BANK'S RESPONSE TO EMERGENCY MOTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION, FOR APPOINTMENT OF AN INTERIM TRUSTEE AND CERTAIN RELATED RELIEF**

Renasant Bank ("Renasant" or "Bank") files this response to the Emergency Motion for Appointment of an Interim Trustee and Certain Related Relief ("Emergency Motion") filed by Wells Fargo Bank, National Association ("Wells Fargo"),[1] alleged creditor of United Furniture Industries, Inc. ("Alleged Debtor" or "UFI"), and in support thereof would show as follows, to-wit:

1.   This Court has jurisdiction over the subject matter herein and the parties hereto pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 105, 303, 506, 701, Rules 1011, 2001 of the Federal Rules of Bankruptcy Procedure, along with other related statutes and rules. This is a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(A) and (O).

**I. Indebtedness Owed to Renasant Bank By UFI**

2.   From time to time, Renasant extended the following loans to the Alleged Debtor, as follows:

   a)   Loan No. xxxx4547-1, from UFI, dated March 31, 2015, and in the original face amount of $2,815,663.25 ("**Note 1**"). Note 1 matures on September 10, 2025.
   b)   Loan No. xxxx547-3, from UFI, dated September 10, 2015, and in the original face amount of $4,729,983.50 ("**Note 2**"). Note 2 matures on September 15, 2025.

---

[1] Wells Fargo, along with Security Associates of Mississippi/Alabama and V&B International, Inc., filed an involuntary petition for relief on December 30, 2022 seeking entry of an order for relief as to UFI ("Involuntary Petition"). No trial date for the Involuntary Petition has been set.

1319836

c) Loan No. xxxx547-5, from UFI, dated October 17, 2018, and in the original face amount of $8,068,690.35  ("**Note 3**").  But for the acceleration of the indebtedness due to default, Note 3 matures on September 15, 2028.

d) Loan No. xxxxx188-1, from UFI, dated December 10, 2020, and in the original face amount of $884,853.85 ("**Note 4**").  But for acceleration of the indebtedness due to default, Note 4 matures on December 15, 2025.

e) Loan No. xxxxxxx321-1, from UFI, dated January 21, 2022, and in the original face amount of $3,500,000.00, and which has a payoff balance as of December 30, 2022 in the amount of $0.00, said loan being a line of credit that has been terminated ("**Note 5**").

f) Loan No. xxxxxxx322-1, from UFI Transportation, LLC ("UFI Transportation") dated January 21, 2022, and in the original face amount of $500,000.00, and which has a payoff balance as of December 30, 2022 in the amount of $0.00, said loan being a line of credit that has been terminated ("**Note 6**").

g) Loan No. xxxx566-7 (Great American Note/Letter of Credit), from UFI, dated October 17, 2018, and in the original face amount of $1,850,000.00, which was increased to the amount of $2,100,000.00 on September 19, 2022 ("**Note 7**").  But for acceleration of the indebtedness due to default, Note 7 matures, unless modified, on October 17, 2023.

h) Loan No. xxxx566-8 (Liberty Note/Letter of Credit), from UFI, dated October 17, 2018, and in the original face amount of $950,000.00, which was most recently reduced to the amount of $62,500.00 on January 21, 2022 ("**Note 8**").  But for acceleration of the indebtedness due to default, Note 8 matures, unless modified, on October 17, 2023.

i) Loan No. xxxx566-9 (American Alternative Note/Letter of Credit), from UFI, dated December 5, 2018, and in the original face amount of $1,000,000.00, which was increased to the amount of $2,500,000.00 on November 4, 2021, 2022 ("**Note 9**").  But for acceleration of the indebtedness due to default, Note 9 matures, unless modified, on December 9, 2023.

j) Loan No. xxxxx66-10 (Hartford Note/Letter of Credit), from UFI, dated April 14, 2020, and in the original face amount of $325,000.00, which was most recently increased to the amount of $2,527,000.00 on January 21, 2022 ("**Note 10**").  But for acceleration of the indebtedness due to default, Note 10 matures, unless modified, on April 14, 2023.

1319836

3. Notes 1 through Note 10 are hereinafter collectively referred to as the "Notes." As of December 30, 2022, or the date Wells Fargo and the two (2) other creditors filed the Involuntary Petition, the aggregate indebtedness due Renasant pursuant to Notes 1 through 10 was $12,382,214.66, not including attorney fees, expenses, amounts allowed by 11 U.S.C. § 506(b) and otherwise incurred by Renasant on account of certain events of default which have occurred under the Notes. In addition, Renasant has made an irrevocable commitment to advance on behalf of the Alleged Debtor up to $3,957,707.20 to various beneficiaries under the letters of credit described above. Stated differently, if all of the outstanding letters of credit are fully drawn, UFI would owe Renasant an additional $3,957,707.20.

4. The Notes and obligations related thereto are governed, in part, by that certain First Amended and Restated Master Credit and Security Agreement ("Master Loan Agreement") executed by the Alleged Debtor for the benefit of Renasant and dated January 21, 2022. The Notes are cross-secured by various first Deeds of Trust encumbering real properties located in Lee County, Mississippi, Monroe County, Mississippi, Chickasaw County, Mississippi and Guilford County, North Carolina ("Real Properties"); as well as by, inter alia, certain deposit accounts, assignments of leases and rents and fixtures, including any personal property on which Renasant is granted a lien pursuant to the terms of the Deeds of Trust and/or Master Loan Agreement.

II. Recent Events

5. Similar to Wells Fargo, Renasant had no prior knowledge of the Alleged Debtor's unexpected closing on November 22, 2022. However, after the Alleged Debtor recently closed its doors, Renasant proactively reached out to and opened lines of communication with both Wells Fargo and the Alleged Debtor in an effort to, inter alia, protect and insure its collateral,

have its collateral appraised and otherwise discuss opportunities with both parties about the indebtedness owed the Bank and possible resolutions to same.

6.      However, without notice to Renasant, Wells Fargo filed the Involuntary Petition against the Alleged Debtor pursuant to 11 U.S.C. § 303.  Although the Court's docket reflects that the Clerk of the Court has issued requisite summons, it's unclear whether the Involuntary Petition has been served upon the Alleged Debtor and thus, this Court has jurisdiction over UFI and the parties referenced herein.  However, out of an abundance of caution, Renasant files this responsive placeholder pleading in an effort to protect its interests in the Real Properties as set forth herein.

7.      On December 22, 2022, the Alleged Debtor, through its counsel, informed Renasant of its intent to file a petition seeking Chapter 11 relief in the United States Bankruptcy Court for the Southern District of Ohio by early January 2023.  The Alleged Debtor indicated that the Chapter 11 would be a "liquidating eleven."  Renasant was further informed that the Alleged Debtor was in discussions with the equity owners of the Alleged Debtor regarding post-petition financing and a third-party entity who would handle the liquidation of its assets, and, moreover, had retained professionals to assist with the filing.  The Alleged Debtor indicated, based on its estimates of the value and the proposed liquidation planned and bidding process, that the Real Properties could be sold for an amount substantially in excess of the indebtedness owed to Renasant.  Generally, Renasant has no objection to a controlled Chapter 11 liquidation of UFI, which the Alleged Debtor has apparently considered and may still be considering, if certain milestones are established for performance, including the filing and this Court's approval of a motion to establish bid procedures necessary to facilitate an active 11 U.S.C. § 363 sale process consistent with that typically employed in the Northern District of Mississippi.  Any liquidation

1319836

process along these lines should include the engagement of certain qualified professionals including a third-party turn around or marketing group(s) with sufficient expertise to market the Real Properties nationally, Renasant's retention of superior liens encumbering the Real Properties, and acceptable adequate protection of its interests in same.  Any terms of engagement of sales professional(s) should be approved by and acceptable to the Bank.  However, for immediate purposes, Renasant seeks clarification of various issues raised by the Emergency Motion, and if the Court is inclined to grant same, entry of an order consistent with certain requirements  contained herein.

### III. Emergency Motion To Appoint Interim Trustee

8. As a practical matter, UFI will be required to file a responsive pleading to the Involuntary Petition within twenty-one (21) days of its service as directed by Rule 1011 of the Federal Rules of Bankruptcy Procedure.  As a priority docket matter, the viability of the Involuntary Petition  will likely be heard by the Court shortly thereafter.  Thus, it's difficult to envision that any appointed Interim Trustee will have the opportunity to take any meaningful action within the limited period of his/her engagement.  An appropriate trustee can be appointed if the Involuntary Petition results in entry of an order for relief under Chapter 7 or upon subsequent motion to the Court if the Alleged Debtor exercises its right to automatically convert the case to Chapter 11 and an order for relief is subsequently entered.  Further, since the Emergency Motion admits that the various premises of UFI are secure and insurance is in place on UFI's inventory, it appears that potential estate assets are already being protected without the appointment of an Interim Trustee who will have a short shelf life.  Additionally, Renasant has made substantial protective advances to appropriately insure the Real Properties that secure the Notes, and, moreover, it has and continues to coordinate with UFI to confirm that electricity and

1319836

other utilities remain in place and coordinate with Wells regarding security for the Real Properties.

9. Section 303(g), Title 11 of the United States Code authorizes this Court to appoint an interim bankruptcy trustee ("Interim Trustee") after the filing of an involuntary petition for relief to serve until a prospective order for relief is entered by the Court.  That particular section specifically references that an Interim Trustee's appointment is governed by 11 U.S.C. § 701 which generally addresses the appointment of an interim trustee in both voluntary and involuntary cases.  Although the Emergency Motion fails to identify a proposed interim trustee, the referenced section contemplates that an Interim Trustee appointed per its provisions may be a member of the U.S. Trustee's panel of "private trustees" <u>or</u> some other third party acceptable to the Court that is serving as a trustee to a debtor's estate immediately before entry of an order of relief issued by the Court.  Unless and until the identity of a proposed Interim Trustee is identified, Renasant is unable to fully consider the Emergency Motion and, as such, reserves the right to further advance an objection to the appointment of any prospective Interim Trustee.  As referenced, in part, by the Emergency Motion, any potential bankruptcy estate of UFI will have secured or partially secured claims against it exceeding $115,000,000.00.  Although, the number and amount of potential trade, tax and priority claimants are presently unknown, UFI's potential bankruptcy estate will, in any event, be a significant case for the Northern District of Mississippi.  Thus, any Interim Trustee for the Alleged Debtor's potential bankruptcy estate will require substantial experience and expertise held by a limited pool of professionals Renasant believes are reasonably available to this Court.  Thus, since the Emergency Motion fails to identify a candidate or candidates to serve in this capacity, Renasant reserves the right to further object to the potential appointment of any Interim Trustee  by the Court.

1319836

10. The Emergency Motion further fails to disclose how the appointed Interim Trustee will be paid. To the extent that the Emergency Motion contemplates that any Interim Trustee appointed by this Court may seek payment from sales proceeds derived from the liquidation of the Bank's collateral or Real Properties, or otherwise seeks to recover costs and expenses pursuant to 11 U.S.C. § 506(c) or surcharge same pursuant to 11 U.S.C. § 543(c), Renasant objects to the Emergency Motion.

11. Rule 2001 of the Federal Rules of Bankruptcy Procedure is the companion statutory catalyst for 11 U.S.C. § 303 which codifies involuntary bankruptcy proceedings. To the extent this Court is inclined to appoint an Interim Trustee during the "gap period" between the Involuntary Petition and any potential order for relief entered by this Court, Rule 2001 is clear that an "…interim trustee may not be appointed…unless the movant furnishes a bond." Wells Fargo, which alleges it is significantly under-secured, requests relief from this statutory requirement by asserting that an award levied against it by the Court pursuant to 11 U.S.C. § 303(i) could and would be offset against the significant unsecured indebtedness UFI allegedly owes Wells Fargo. Although Rule 2001 clearly requires the posting of a bond for the benefit of all creditors, including Renasant, whether a meaningful bond is appropriate is entirely dependent on the authority and obligations placed on the Interim Trustee by the Court, and Renasant must reserve its response as to both the amount and need for a bond.

12. Further, Rule 2001 specifically requires that any order appointing an Interim Trustee specifically state the reason for the appointment and, moreover, shall specify his/her duties. Thus, should this Court expressly find, after receipt of evidence in the form of testimony, exhibits and/or otherwise, that the appointment of an Interim Trustee during an abbreviated "gap period" is 1.) necessary to preserve the property of UFI's potential bankruptcy estate, or 2.) to

1319836

prevent loss to same and any order granting the Emergency Motion must specifically detail any Interim Trustee's duties necessary to preserve estate property or prevent loss to same. For the reasons set forth herein, both of these concerns appear to be mitigated by actions already taken by creditors to UFI's potential bankruptcy estate.

13. In addition to the "unknowns" as set forth above, which hamper Renasant's ability to take a firm position in response to the extreme remedy requested by Wells Fargo in its Emergency Motion, Renasant notes that applicable case law counsels that a request for an interim trustee should be denied in "the absence of an exceptionally strong need for doing so" or "where no facts are alleged showing a necessity for the appointment." *In re Diamondhead Casino Corp.*, 540 B.R. 499, 505 (Bankr. D. Del. 2015). The appointment of an interim trustee in an involuntary case should only be ordered if "necessary to preserve property of the estate or to prevent loss to the estate." *Id.* at 507. The Emergency Motion highlights the alleged administrative burdens on Wells Fargo resulting from UFI's abrupt closure. While not intending to make light of such burdens, they are not, in and of themselves, grounds for the appointment of an interim trustee. It is unclear to Renasant, based on the allegations of the Emergency Motion and its understanding of the current status of the Alleged Debtor, as well as Renasant's understanding of the Alleged Debtor's proposed independent plans to address its situation, how the appointment of an interim trustee is "necessary to preserve property of the estate or to prevent loss to the estate."

14. For other good and sufficient reasons to be assigned at a hearing regarding this matter. Renasant reserves the right to amend this pleading up to and including any hearing regarding the Emergency Motion.

1319836

WHEREFORE, Renasant respectfully requests the entry of an order consistent with that set forth herein. Renasant prays for such other good and sufficient relief as this Court may deem just.

THIS, the 5th day of January, 2023.

>Respectfully submitted,
>
>RENASANT BANK
>
>/s/ D. Andrew Phillips
>D. ANDREW PHILLIPS (MSB #8509)
>ELIZABETH N. FISHER (MSB #106477)
>MITCHELL, McNUTT & SAMS, P.A.
>P.O. Box 947
>Oxford, MS  38655-0947
>(662) 234-4845
>
>and
>
>JAMES P. WILSON, JR. (MSB #10783)
>MITCHELL, McNUTT & SAMS, P.A.
>P.O. Box 1366
>Columbus, MS  39703
>(662) 328-2316

1319836

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of January, 2023, a copy of the foregoing was served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

| | |
|---|---|
| United Furniture Industries, Inc.<br>Kimberly Harper, CFO<br>Alpesh Amin, CEO<br>5380 Highway 145 South<br>Tupelo, MS  38801 | *Alleged Debtor* |
| R. Spencer Clift, III, Esquire<br>sclift@bakerdonelson.com | *Attorney for Petitioner, Wells Fargo Bank, a National Association* |
| E. Franklin Childress, Jr., Esquire<br>fchildress@bakerdonelson.com | *Attorney for Petitioner, Wells Fargo Bank, a National Association* |
| Daniel F. Fiorillo, Esquire<br>dfiorillo@otterbourg.com | *Attorney for Petitioner, Wells Fargo Bank, a National Association* |
| Andrew M. Kramer, Esquire<br>akramer@otterbourg.com | *Attorney for Petitioner, Wells Fargo Bank, a National Association* |
| U.S. Trustee<br>Office of the U.S. Trustee<br>USTPRegion05.AB.ECF@usdoj.gov | |

DATED, this the 5th day of January, 2023.

/s/ D. Andrew Phillips

1319836