SO ORDERED,



**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| UNITED FURNITURE INDUSTRIES, INC., *et al.*[1] ) | Case No. 22-13422-SDM |
| | ) Chapter 11 |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER (A) ESTABLISHING BIDDING PROCEDURES RELATING TO SALES OF REAL PROPERTY; (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER PROPOSED SALES; (C) APPROVING PROPOSED SALES; AND (D) GRANTING RELATED RELIEF**

THIS CAUSE having come on for consideration of the *Motion for Entry of Orders (A) Establishing Bidding Procedures Relating to Sales of Real Property; (B) Scheduling Auction and Hearing to Consider Proposed Sales; (C) Approving Proposed Sales; and (D) Granting Related Relief* [Dkt #473] (the "**Motion**")[2] filed by Derek Henderson, Chapter 11 trustee ("**Trustee**") for each of the above-captioned debtors (collectively, the "**Debtors**") for entry of an order (this "**Bid**

---

[1] The Debtors in these Chapter 11 cases, and the last four digits of each Debtor's federal tax identification number, are as follows: United Furniture Industries, Inc. (2576); United Furniture Industries NC, LLC.(9015); United Furniture Industries CA, Inc. (9966); FW Acquisition, LLC (2133); Furniture Wood, Inc. (9186);United Wood Products, Inc. (1061); Associated Bunk Bed Company (0569); UFI Royal Development, LLC (8143); UFI Exporter, Inc. (6518); UFI Transportation, LLC (9471); and LS Logistics, LLC (7004).

[2] Any capitalized not otherwise defined herein shall have the meaning ascribed to them in the Motion.

**Procedures Order**") (i) authorizing and approving the form Bid Procedures attached hereto as

Exhibit 1 (the "**Bid Procedures**") in connection with the anticipated sale (the "**Sale**") of the

Debtors' various real property assets (the "**Real Property**"), (ii) authorizing the Trustee to

designate a Stalking Horse Purchaser and grant a Breakup Fee and Bid Protections, (ii)

scheduling an Auction and Sale Hearing to consider a Sale of one or more Real Property assets,

(iii) approving the form and manner of notice thereof (the "**Notice of Sale**") in the form attached

hereto as Exhibit 2, and (iv) granting related relief, all as more fully set forth in the Motion; and

the *Limited Responses* filed thereto by Renasant Bank [Dkt # 548] and by BNA Bank [Dkt

#549], respectively.

The Court, having reviewed the Motion and having heard statements in support of the

relief requested therein at a hearing before this Court (the "**Hearing**"), and having determined

the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the

relief granted herein, makes the following findings of fact and conclusions of law:

A.    The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to Bankruptcy Rule

9014.

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.

C.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

D.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      The bases for the relief requested in the Motion are §§ 105, 363, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Bankruptcy Rules 2002, 6004, and 9014.

F.      Good and sufficient notice of the Motion was provided by the Trustee in compliance with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, the local bankruptcy rules for the Northern and Southern Districts of Mississippi (the "**Local Rules**") and all applicable Court Orders. A reasonable opportunity to object or be heard regarding the relief provided in this Bid Procedures Order has been afforded to all parties in interest.

G.      The Bid Procedures attached hereto as <u>Exhibit 1</u> are reasonable, appropriate and represent the best method for providing a uniform process by which the Trustee can effectively and efficiently conduct Sales of Real Property in order to maximizing value for the benefit of the Debtors, their estates, and their creditors.  The Bid Procedures were formulated in good faith by the Trustee and its professionals and are reasonably designed to attract value-maximizing proposals beneficial to the estates and their creditors and other parties in interest.

H.      The Trustee has demonstrated compelling and sound business justifications for authorization to designate a Stalking Horse Purchaser and provide a Breakup Fee and other Bid Protections in accordance with the terms of the Bid Procedures.

I.      The proposed schedule of dates and deadlines in the Bid Procedures are reasonably calculated to provide adequate opportunity for a prompt but effective process to obtain the highest and best Bid for the Sale of the Debtors' Real Property.

J.      Filing and issuance of the Notice of Sale attached hereto as <u>Exhibit 2</u> by the Trustee in order to initiate the Sale process for a proposed Sale of Real Property in accordance

with the Bid Procedures is reasonably calculated to provide interested parties with timely and proper notice of a proposed Sale.  The Notice of Sale sufficiently advises both Potential Bidders as well as creditors and interested parties with, notice and opportunity, without limitation, of the following: (i) notice of designation of a Stalking Horse Purchaser and of a Breakup Fee and other Bid Protections, and opportunity to object to the same; (ii) the Bid Procedures and all dates and deadlines related thereto, (iii) the date, time, and place of the Auction (if one is held), (iv) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing, and (iv) adequate description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds.

Based on the foregoing, it is therefore

ORDERED that the Motion is GRANTED, and all objections, statements, and reservations of rights with respect to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled, as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled and denied on the merits with prejudice.

**Bid Procedures**

IT IS FURTHER ORDERED that the Bid Procedures, attached hereto as Exhibit 1, are hereby approved in their entirety and fully incorporated into this Bid Procedures Order.  The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale and any party desiring to submit a higher or better offer for Real Property must comply with the terms of the Bid Procedures and this Bid Procedures Order.  The Bid Procedures shall also govern the terms on which the Trustee will proceed with any Auction and/or Sale.

4

### Designation of a Stalking Horse Purchaser

IT IS FURTHER ORDERED that the Trustee may, but shall not be required to, designate a Stalking Horse Purchaser and enter into a Stalking Horse Purchase Agreement in connection with a Sale.  Whether the Trustee elects to designate a Stalking Horse Purchaser or to advance a Sale of any Debtor's Real Property without designating a Stalking Horse Purchaser, the Trustee shall initiate a Sale by filing with the Court the Notice of Sale substantially similar to the form attached hereto as <u>Exhibit 2</u>, together with all Exhibits thereto.  The Trustee shall obtain the date and time of the Sale Hearing and the deadline to object to the Sale from the Court prior to filing the Notice of Sale.  The Trustee shall serve the Sale Notice on the Master Service List in these cases and all Potential Bidders having expressed interest in the Real Property asset(s) subject of the proposed Sale.  Such filing and service of the Notice of Sale for any Sale of Real Property initiated by the Trustee shall constitute good and sufficient notice of the Bid Procedures, the Auction, the request for approval of the proposed Sale, and the Sale Hearing.

IT IS FURTHER ORDERED that if a Stalking Horse Purchaser is designated by the Trustee with respect to a Sale, absent objection to the Stalking Horse Purchaser and Bid Protections afforded the Stalking Horse Purchaser by the attendant deadlines set forth in the Notice of Sale, the Trustee may submit an order to the Court under certificate of counsel approving the designation of the Stalking Horse Purchaser and the Bid Protections.

### Credit Bids

IT IS FURTHER ORDERED that any Secured Creditor that has a valid and perfected lien on any of the Real Property subject of a Sale (including, for the avoidance of doubt, the Postpetition Lender) shall have the right to credit bid all or a portion of the value of such Secured Creditor's claim within the meaning of § 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral over which such Secured

Creditor has a valid lien; and *provided further* that any credit bid by a Secured Creditor shall contain

a cash component sufficient to repay in full in cash all (x) secured claims of a senior Secured

Creditor, if any (unless such senior Secured Creditor agrees to a different treatment), (y) the

Breakup Fee, if a Stalking Horse Purchaser is designated and is not the Successful Bidder, and (z)

all other cash items (including any applicable surcharges assessed against the Real Property subject

of the Sale) required to be paid by a cash buyer at Closing.  Notwithstanding anything to the

contrary contained herein or in the Bid Procedures, (i) the Secured Creditors, or their respective

designee or administrative agent, as applicable, have the right, but not the requirement, to credit bid

up to the full amount of their secured indebtedness, as applicable, at or before the Auction in

accordance with the terms thereof and pursuant to § 363(k) of the Bankruptcy Code, and (ii) any

Bid submitted by a Secured Creditor, whether as a Stalking Horse Purchaser or otherwise, shall be

deemed a Qualified Bid notwithstanding the requirements of the Bid Procedures (including, for the

avoidance of doubt, the Good Faith Deposit requirement, which shall not be applicable to any credit

bid by a Secured Creditor).

### The Auction

IT IS FURTHER ORDERED that as further described in the Bid Procedures, if two or

more Qualified Bids are received by the Bid Deadline, or if a Stalking Horse Purchaser has been

designated and at least one Qualified Bid is received that is a valid Initial Overbid, the Trustee

will conduct an Auction. The Trustee is authorized, subject to the terms of the Bid Procedures

and this Bid Procedures Order, to take actions reasonably necessary to conduct and implement

the Auction.  At least forty-eight (48) hours prior to an Auction, the Trustee shall provide to all

Secured Creditors (a) the applicable Minimum Bid Increments established with respect to any

Auction of any Real Property asset, and (b) the good faith best estimate of the amount of any

surcharges the Trustee intends to assess against any Real Property asset at the Sale.

IT IS FURTHER ORDERED that if the Trustee does not receive two or more Qualified

Bids or, if a Stalking Horse Purchaser has been designated and at least one Qualified Bid that is a

valid Initial Overbid is not received: (i) the Trustee may cancel the Auction after notice to

Secured Creditors, (ii) the Stalking Horse Agreement or other Qualified Bid may be deemed by

the Trustee to be the Successful Bid for the Assets, and (iii) the Trustee shall be authorized to

seek approval of the Stalking Horse Agreement or other Qualified Bid as the Successful Bid at

the Sale Hearing.

IT IS FURTHER ORDERED that only Qualified Bidders (including, for the avoidance of

doubt, the Stalking Horse Purchaser) will be entitled to make any Bids at the Auction.

IT IS FURTHER ORDERED that the Debtors and their professionals shall direct and

preside over the Auction, and the Auction shall be transcribed or videotaped.

IT IS FURTHER ORDERED that each Qualified Bidder (including, for the avoidance of

doubt, any Stalking Horse Purchaser) participating in the Auction must confirm that it (a) has not

engaged in any collusion with respect to the bidding or sale of any of the assets described herein,

(b) has reviewed, understands, and accepts the Bid Procedures, and (c) has consented to the core

jurisdiction of this Court and to the entry of a final order by this Court on any matter related to

this Bid Procedures Order, the Auction or the Sale if it is determined that this Court would lack

Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

IT IS FURTHER ORDERED that the Stalking Horse Purchaser, if any, shall be deemed

to be a Qualified Bidder and the Stalking Horse Purchaser's Deposit shall be deemed to be a

Good Faith Deposit.  In the event of a competing Qualified Bid, all Qualified Bidders will be

entitled, but not obligated, to submit Overbids.

IT IS FURTHER ORDERED that no person or entity, other than the Stalking Horse Purchaser, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and, by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code § 503(b) or otherwise.

**The Sale Hearing**

IT IS FURTHER ORDERED that, at a Sale Hearing, the Trustee and the Successful Bidder, or if applicable the Backup Bidder, shall be entitled to request that the Court find them to be good faith purchasers of the Real Property and entitled to all the protections of § 363(m) of the Bankruptcy Code, whether or not an Auction is held.

IT IS FURTHER ORDERED that the Trustee is authorized to perform any obligation intended to be performed prior to a Sale Hearing or entry of a Sale Order with respect thereto.  A Sale Hearing may be adjourned from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed on the Court's docket.

IT IS FURTHER ORDERED that a party's failure to timely file a Sale Objection in accordance with the Sale Notice shall forever bar the assertion, at the applicable Sale Hearing or otherwise, of any objection to the Sale, or to the consummation of the Sale and the performance of the related transactions, including the transfer of Real Property to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to § 363(f) of the Bankruptcy Code, and shall be deemed to be a "consent" for purposes of § 363(f) of the Bankruptcy Code.  Notwithstanding the foregoing, the rights of all parties are reserved to timely file and prosecute objections at the Sale Hearing in accordance with the Notice of Sale with

8

respect to the costs of Diligence Materials, commissions, surcharges assessed by the Trustee

under 11 U.S.C. § 506(c) and the approval of a Backup Bidder.

### Other Relief

IT IS FURTHER ORDERED that the requirements of Bankruptcy Rules 6004(h) is

waived.

IT IS FURTHER ORDERED that the Trustee is authorized to take all actions necessary

to effectuate the relief granted pursuant to this Order in accordance with the Motion.

IT IS FURTHER ORDERED that notwithstanding anything herein to the contrary, the

entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly: (a) Renasant's, BNA's and/or Three Rivers Planning and Development District's

rights to seek any other or supplemental relief relating to the Chapter 11 Trustee and/or the

Debtors; or (b) any of the rights of Renasant, BNA or Three Rivers Planning and Development

District under the Bankruptcy Code or under non-bankruptcy law or at equity, including, without

limitation, the right to (i) request further modification of the automatic stay of section 362 of the

Bankruptcy Code; (ii) request dismissal of the Chapter 11 Cases or Successor Case, conversion

of the Chapter 11 Cases to cases under Chapter 7, or appointment of an examiner with expanded

powers; (iii) object to any proposed abandonment of property of the estate under 11 U.S.C. §

554; (iv) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11

plan or plans; or (v) seek additional or supplemental relief with respect to this Order.

IT IS FURTHER ORDERED that the terms and conditions of this Order shall be

immediately effective and enforceable upon its entry, notwithstanding any provision in the

Bankruptcy Rules or the Local Rules to the contrary, and the Trustee may, in his discretion and

without further delay, take any action and perform any act authorized under this Order.

IT IS FURTHER ORDERED that the Court retains jurisdiction with respect to all matters

arising from or related to the implementation, interpretation, and enforcement of this Bid

Procedures Order.

**                END OF ORDER        **

Agreed and approved for entry:


 /s/ *D. Andrew Phillips*                 
Counsel for Renasant Bank and BNA Bank


 /s/ *Douglas C. Noble*                 
Counsel for Trustee


Order submitted by:

Douglas C. Noble, MS Bar No. 10526
**McCraney | Montagnet | Quin | Noble PLLC**
602 Steed Road • Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
Facsimile:  (601) 510-2939
Email:  dnoble@mmqnlaw.com

***Counsel to Chapter 11 Trustee***

# EXHIBIT

# 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| UNITED FURNITURE INDUSTRIES, INC., *et al.*[1] | ) | Case No. 22-13422-SDM |
| | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |
| | ) | |

## BID PROCEDURES

On [     ], 2023, the Bankruptcy Court entered an order [Dkt #___] (the "**Bid Procedures Order**") approving, among other things, these bid procedures (the "**Bid Procedures**"). These Bid Procedures set forth the process by which the Trustee is authorized to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of real property assets of one or more of the Debtors (the "**Real Property**"). Subject to the entry of the Sale Order, the Sale may be effected by the Trustee with or without designating a Stalking Horse Purchaser. If a Stalking Horse Purchaser is designated, the terms and conditions of the proposed Sale will be set forth in a Stalking Horse Purchase Agreement. In either instance, all Sales will be subject to higher or otherwise better Bids (as defined below) in accordance with these Bid Procedures. Pursuant to the Bid Procedures, the Trustee will determine the highest or otherwise best price for the sale of Real Property in his sole discretion but will consult with his real estate advisors at B. Riley Real Estate, LLC ("**B.Riley**"), the Official Committee of Unsecured Creditors (the "**Committee**"), United Finance Services, LLC ("**Postpetition Lender**") and any holder of a valid lien on any of the Real Property subject of the Sale ("**Secured Creditor**") (collectively, the "**Consultation Parties**").

### IMPORTANT DATES

The following dates and times shall govern and apply to the Sale of Real Property. Your rights and/or ability to participate in the Sale process, the Auction or the Sale Hearing shall be subject to the terms set forth below:

---

[1] The Trustee in these Chapter 11 cases, and the last four digits of each Debtor's federal tax identification number, are as follows: United Furniture Industries, Inc. (2576); United Furniture Industries NC, LLC.(9015); United Furniture Industries CA, Inc. (9966); FW Acquisition, LLC (2133); Furniture Wood, Inc. (9186);United Wood Products, Inc. (1061); Associated Bunk Bed Company (0569); UFI Royal Development, LLC (8143); UFI Exporter, Inc. (6518); UFI Transportation, LLC (9471); and LS Logistics, LLC (7004).

(All times are prevailing Central Time)

- **[Day 0], 2023 at 5:00 p.m.:**  Designation of Stalking Horse Purchaser, if any, and issuance of Notice of Sale

- **[Day 5], 2023 at 5:00 p.m.:**  Deadline to object to designation of Stalking Horse Purchaser and proposed Bid Protections, if any

- **[Day 20], 2023 at 5:00 p.m.:**  Deadline to submit Bid to be considered for the Auction

- **[Day 27], 2023:**  Advise bidders and Consultation Parties of any Qualified Bids

- **[Day 30-35], 2023 at 5:00 p.m.:**  Proposed date of Auction

- **[One Day After Auction], 2023 at 5:00 p.m.:**  Trustee to file Notice of Successful Bidder at the conclusion of the Auction

- **[Five Days After Auction], 2023 at 5:00 p.m.:**  Deadline to file and serve objections to Sale

- **[TBD], 2023 at ___ a.m./p.m.:**  Sale Hearing

## SALE OF REAL PROPERTY

### 1.      Real Property to Be Sold Free and Clear

The Trustee will seek to sell all of Debtors' right, title and interest in and to Real Property free and clear of all mortgages, conditional sales agreements, liens, encumbrances, leases, options, security interests, conveyances, conditions, restrictions, unrecorded easements, or other encumbrances, title exceptions, or other interests of any kind (collectively, "**Encumbrances**"), subject only to the lien for ad valorem taxes falling due after closing or any  additional exceptions approved by Successful Bidder in writing or otherwise required by law (collectively, "**Permitted Encumbrances**") to the maximum extent permitted under § 363 of the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the sale of Real Property with the same validity and priority as such Encumbrances applied against any Real Property at the time of the closing of the Sale.

### 2.   As Is/Where Is

Except as otherwise set forth in the purchase and sale agreement of the Successful Bidder or an order of the Bankruptcy Court approving a Sale (the "**Sale Order**"), the sale of Real Property pursuant to the Bid Procedures shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by Trustee or the estates.  By submitting a Bid, a Bidder shall be deemed to acknowledge and represent that it has had an

opportunity to conduct any and all due diligence regarding the Real Property prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Real Property in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Real Property, or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in these Bid Procedures or as set forth in the purchase and sale agreement of a Successful Bidder or the Sale Order.  Each Bidder shall be deemed to be familiar with the Real Property, be knowledgeable, and to understand and accept the risks inherent in the acquisition and ownership of the Real Property and its condition at the time of Closing. The Sale Order shall specifically include an injunction as to any future actions against the Real Property and Stalking Horse Purchaser or other Successful Bidder, as applicable, to the fullest extent allowed.

## BIDDING PROCESS

### 3.    Potential Bidders

The Trustee's real estate advisor, B. Riley Real Estate, LLC ("**B. Riley**"), will identify and engage with parties potentially interested in and who it reasonably believes would have the financial resources to consummate a Sale ("**Potential Bidder**"), which includes both potential strategic and financial investors.  B. Riley will negotiate with all such parties to identify genuine interest and ability to close one or more Sales and to identify whether any such party should be designated as a Stalking Horse Purchaser (defined and described below).  Each Potential Bidder will be provided with a copy of these Bid Procedures and the Stalking Horse Purchase Agreement and other necessary documents or information.

### 4.    Due Diligence Materials

B. Riley has established and provided access to due diligence materials relating to the Real Property (the "**Diligence Materials**") held in an online data room (the "**Data Room**"). Included in the Data Room are, among other things, title work and preliminary title commitments, ALTA surveys, and Phase 1 environmental surveys obtained by the Trustee as to each parcel of Real Property to be included in a Sale.  No due diligence will continue after the Bid Deadline (defined below).

### 5.    Selection of a Stalking Horse Purchaser

The Trustee may, but is not obligated to, enter into an asset purchase agreement based on the Form Purchase Agreement (defined below) with a Stalking Horse Purchaser (a "**Stalking Horse Purchase Agreement**") for the Sale of Real Property to establish a minimum bid at the Auction.

The Stalking Horse Purchase Agreement may contain a breakup fee in an amount determined by the Trustee in his sole discretion, after consultation with B. Riley and the other Consultation Parties, to be commercially reasonable and customary for a transaction of the nature and amount of the subject Sale (the "**Breakup Fee**") together with other exclusive rights

protections and privileges afforded the Stalking Horse Purchaser under the Stalking Horse Purchase Agreement (together with the Breakup Fee, the "**Bid Protections**"). The Breakup Fee shall be an allowed administrative expense.  In the event the Trustee becomes obligated to pay the Breakup Fee, the Breakup Fee shall be payable solely as follows: (a) from the proceeds of a closed sale of the Real Property to a Successful Bidder (as defined herein), if the Purchaser is not the Successful Bidder or (b) from the forfeited Good Faith Deposit (as defined herein) of a Successful Bidder if: (i) such Successful Bidder is not the Purchaser, (ii) such Successful Bidder does not close the Sale of the Real Property and forfeits its Good Faith Deposit under the terms of the Successful Bidder's Modified Purchase Agreement (as defined herein), and (iii) the Purchaser is not the Backup Bidder (as defined herein).  If earned, a Breakup Fee may be applied as a credit by a Stalking Horse Purchaser in any Overbid later made by a Stalking Horse Purchaser at the Auction.

If the Trustee selects a party to serve as the Stalking Horse Purchaser on or before [_____ xx], 2023, upon such selection, the Trustee shall file the Notice of Sale with the Bankruptcy Court and provide five (5) days' notice of and an opportunity to object to the designation of the Stalking Horse Purchaser and the Bid Protections set forth in the Stalking Horse Purchase Agreement.  If an objection is timely filed, the Trustee will request the Bankruptcy Court's expedited consideration of any objection; only issues attendant to the designation of the Stalking Horse Purchaser and the Bid Protections proposed to be granted thereto shall be considered and determined at that time.  Absent objection, the Trustee may submit an order to the Bankruptcy Court under certificate of counsel approving the designation of the Stalking Horse Purchaser and the Bid Protections.

### 6.    Qualification and Bidding Process

To be eligible to participate in an Auction, each offer, solicitation, or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), must be determined by the Trustee to satisfy each of the following conditions:

a.  **Good Faith Offer; Partial Bids:**  Each Bid must constitute a good faith, bona fide offer to purchase all or a portion of the Real Property subject to the Sale.

b.  **Good Faith Deposit:**  Each Bid (other than the Stalking Horse Bid) must be accompanied by a deposit in the amount of ten percent (10%) of the Bid's proposed cash purchase price to an escrow account to be identified and established by the Trustee (the "**Good Faith Deposit**").

c.  **Terms:** A Bid must be on terms that are substantially the same or better than the terms of the Stalking Horse Purchase Agreement, if applicable, as determined by the Trustee.

d.  **Executed Agreement**: To be deemed a "**Qualifying Bid**", a Bid must be (i) if a Stalking Horse Purchaser has been designated for the Real Property, substantially the same terms as, or terms more favorable to the Trustee and the estates than, the terms set forth in a Stalking Horse Purchase Agreement, if applicable and include a redline marked against the Stalking Horse Purchase

4

Agreement; and (ii) otherwise, in the form of the Purchase Agreement to be included in the Data Room (the "**Form Purchase Agreement**") and include a redline marked against the Form Purchase Agreement. A Bid, other than the bid of the Stalking Horse Purchaser, if any, will not be considered qualified for the Auction if (i) such Bid contains additional material representations and warranties, covenants, closing conditions, termination rights other than as may be included in the Form Purchase Agreement or the Stalking Horse Purchase Agreement (it being agreed and understood such Bid shall modify the Stalking Horse Purchase Agreement as needed to comply in all respects with the Bid Procedures Order and will remove provisions that apply only to the Stalking Horse Purchaser such as the Bid Protections) (a "**Modified Purchase Agreement**"); (i) such Bid is not received by the Trustee in writing on or prior to the Bid Deadline, and (iii) such Bid does not contain evidence that the Person submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby, including proof the Good Faith Deposit has been made. Each Modified Purchase Agreement must provide a commitment to close within two (2) business days after all closing conditions are met.

e.  **Amount of Bid:** Each Bid or combination of Bids must state the amount of cash offered for the Real Property (the "**Purchase Price**") and, if a Bid is made on more than one Real Property asset, a Bid shall state the amount of the Purchase Price allocated to each Real Property asset.  The Purchase Price shall include an amount equal to the due diligence expenses incurred by the Trustee in procuring the Diligence Materials provided to Interested Parties in aid of Sales of Real Property, which amount shall be repaid at Closing of the Sale. If there is a Stalking Horse Purchaser, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of the purchase price under the Stalking Horse Purchase Agreement plus the Breakup Fee and the Minimum Overbid Increment (the "**Initial Overbid**").

f.  **Corporate Authority:** Written evidence reasonably acceptable to the Trustee demonstrating appropriate corporate authorization to consummate the proposed transaction; *provided, however*, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the transaction by the equity holder(s) of such Bidder.

g.  **Disclosure of Identity of Potential Bidder**: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Real Property or otherwise participating in connection with such Bid (including the identity of any parent/affiliate companies of such entity), and the complete terms of any such participation, including any connections, agreements, arrangements or understanding with the Trustee, the Stalking Horse Purchaser, or any other known, potential, or prospective bidder, or Potential Bidder, or any officer, director, or equity holder of the Trustee. Under no circumstances shall any

undisclosed principals, equity holders or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom the Trustee's advisors should contact regarding such Bid.

h. **Proof of Financial Ability to Perform:** Written evidence the Trustee reasonably conclude demonstrates the Bidder has the necessary financial ability to close the transaction. Such information should include, *inter alia*, the following:

   (a)    contact names and numbers for verification of financing sources,

   (b)    written evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the transaction;

   (c)    the Bidder's current financial statements (audited if they exist);

   (d)    a description of the Bidder's pro forma capital structure; and

   (e)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee demonstrating such Bidder can close the transaction; *provided, however*, the Trustee shall determine in their reasonable discretion whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

i. **Regulatory and Third-Party Approvals**: A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Sale, and the time period within which the Bidder expects to receive such regulatory and third-party approvals.

j. **Conditions/Contingencies:** A Bid may not (i) contain representations and warranties, covenants or termination rights which Trustee, in his business judgment, determines to be more onerous than those set forth in the Stalking Horse Purchase Agreement (when considering all such provisions as a whole) or (ii) be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of unperformed due diligence.

k. **Irrevocable:** A Bid (other than the Bid of the Stalking Horse Purchaser) must be irrevocable until two (2) business days after the closing of the Sale. Each Bidder (other than the Stalking Horse Purchaser) further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Backup Bidder (as defined below) as may be designated by the Trustee at the Sale Hearing, in the event the Successful Bidder fails to close as provided in

the Successful Bidder's purchase agreement, as modified, if at all, and the Sale Order. The Stalking Horse Purchaser shall have the right, but not the obligation, to serve as a Backup Bidder if the Stalking Horse Purchaser is not the Successful Bidder.

l.   **Time Frame for Closing:** A Bid by a Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Trustee but in no event later than two (2) days after all closing conditions are met.

m.   **Consent to Jurisdiction:** Each Bidder must submit to the jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to the Trustee, the Bid Procedures, the Auction and the Sale.

n.   **Disclaimer of Fees:** Each Bid (other than the Stalking Horse Purchase Agreement) must disclaim any right to receive a fee analogous to a breakup fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Purchaser) will be permitted to request, nor be granted by the Trustee, at any time, whether as part of the Auction or otherwise, a breakup fee, expense reimbursement, termination fee, or any other similar form of compensation. By submitting its Bid, each Bidder (other than the Stalking Horse Purchaser) is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including pursuant to Bankruptcy Code § 503(b).

o.   **Bid Deadline:** The Trustee must receive a Bid in writing, on or before [____ xx], 2023 at 5:00 p.m. (prevailing Central Time) or such later date as may be agreed to by the Trustee (the "**Bid Deadline**").  Bids must be sent to the following by the Bid Deadline to be considered: (a) Michael Jerbich, B. Riley Real Estate, LLC mjerbich@brileyfin.com (b) Derek Henderson, Chapter 11 Trustee derek@derekhendersonlaw.com; (c) Douglas C. Noble, counsel to the Trustee, dnoble@mmqnlaw.com; and (d) Paul Douglas Stewart, dstewart@stewartrobbins.com, counsel to Committee.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "**Qualified Bid**," and such Bidder shall constitute a "**Qualified Bidder**." Within seven (7) days after the Bid Deadline, the Trustee and B. Riley will determine which Bidders are Qualified Bidders and will notify such Bidders whether Bids submitted constitute Qualified Bids to enable such Qualified Bidders to attend the Auction. Any Bid that is not deemed a Qualified Bid will not be considered by the Trustee.  To the extent there is any dispute regarding whether a bidder is a Qualified Bidder, such dispute may be raised with the Bankruptcy Court on an expedited basis prior to the commencement of the Auction. A Stalking Horse Purchaser shall be deemed to be a Qualified Bidder.

Between the date that the Trustee notifies a Bidder that it is a Qualified Bidder and the Auction, the Trustee may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Trustee, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; *provided* that any such Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bid Procedures.

Prior to the Auction, the Trustee will evaluate Qualified Bids and identify the Qualified Bid that is, in the Trustee's reasonable business judgment, the highest or otherwise best bid (the "**Starting Bid**"). If there is a Stalking Horse Bid, the Starting Bid shall equal an amount of cash equal to the Initial Overbid. In making such determination, the Trustee will consider, among other things, the execution risk attendant to any submitted bids. Within twenty-four (24) hours of such determination, but in no event later than twenty-four (24) hours before the start of the Auction, the Trustee will (i) notify the Stalking Horse Purchaser as to which Qualified Bid is the Starting Bid and (ii) distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

## CREDIT BID RIGHTS

Any Secured Creditor that has a valid and perfected lien on any of the Real Property (including, for the avoidance of doubt, the Postpetition Lender) shall have the right to credit bid all or a portion of the value of such Secured Creditor's claim within the meaning of § 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral over which such Secured Creditor has a valid lien; and *provided further* that any credit bid by a Secured Creditor shall contain a cash component sufficient to repay in full in cash all (x) secured claims of a senior Secured Creditor, if any (unless such senior Secured Creditor agrees to a different treatment), (y) the Breakup Fee, if a Stalking Horse Purchaser is designated and is not the Successful Bidder, and (z) all other cash items (including any applicable surcharges assessed against the Real Property subject of the Sale) required to be paid by a cash buyer at Closing. Notwithstanding anything to the contrary contained herein or in the Bid Procedures Order, (i) the Secured Creditors, or their respective designee or administrative agent, as applicable, have the right, but not the requirement, to credit bid up to the full amount of their secured indebtedness, as applicable, at or before the Auction in accordance with the terms thereof and pursuant to § 363(k) of the Bankruptcy Code, and (ii) any Bid submitted by a Secured Creditor, whether as a Stalking Horse Purchaser or otherwise, shall be deemed a Qualified Bid notwithstanding the requirements of the Bid Procedures (including, for the avoidance of doubt, the Good Faith Deposit requirement, which shall not be applicable to any Credit Bid by a Secured Creditor).

## AUCTION

If two or more Qualified Bids are received by the Bid Deadline, the Trustee will conduct the Auction to determine the highest and best Qualified Bid or combination of Qualified Bids. This determination shall take into account any factors the Trustee reasonably deem relevant to the value of the Qualified Bid to the estates, including but not limited to the following: (a) the

amount and nature of the consideration; (b) the ability of the Qualified Bidder to close the proposed Transaction and the conditions related thereto, and the timing thereof; (c) whether the Bid is a bulk bid for all of the Trustee' assets or a partial bid; (d) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (e) any purchase price adjustments; (f) the impact of the Transaction on any actual or potential litigation; (g) the net after-tax consideration to be received by the Trustee' estates; and (h) the tax consequences of such Qualified Bid (collectively, the "**Bid Assessment Criteria**").

If no Qualified Bids other than the Stalking Horse Bid are received prior to the Bid Deadline, then the Auction will not occur, the Stalking Horse Purchase Agreement may be deemed the Successful Bid, and, subject to the termination rights under the Stalking Horse Purchase Agreement, the Trustee will pursue entry of an order by the Bankruptcy Court authorizing the Sale to the Stalking Horse Purchaser as soon as practicable.

## PROCEDURES FOR AUCTION

The Auction, if necessary, will take place at [_____] on [_____ **xx], 2023 at ____ a.m./p.m. (prevailing Central Time)** or such later time on such day or other place as the Trustee shall notify all Bidders who have submitted Qualified Bids. Only the Stalking Horse Purchaser and such other Qualified Bidders will be entitled to make any Bids at the Auction.

### 1.    The Trustee Shall Conduct the Auction

The Trustee and his professionals shall direct and preside over the Auction, and the Auction shall be transcribed or videotaped. At the start of the Auction the Trustee shall describe the terms of the Starting Bid and provide each participant in the Auction with a copy of the Modified Purchase Agreement associated with the Starting Bid.

All Bids made at the Auction after the Trustee's announcement of the Starting Bid ("**Overbids**") shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The Trustee shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid and all Overbids. Upon the solicitation of each round of Overbids, the Trustee may announce a deadline (as the Trustee may, in his business judgment extend from time to time) by which time any Overbids must be submitted to the Trustee.

### 2.    Terms of Overbids

To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

a.    Minimum Overbid Increment

Any Overbid after the Initial Overbid shall be made in increments of at least [$_____] (the "**Minimum Overbid Increment**").  The Trustee shall provide all Consultation Parties with the amount of the Minimum Overbid Increment and an estimate of any surcharge amounts to be assessed against the Real Property at least forty-eight (48) hours prior to the Auction.

b.    Remaining Terms Are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; *provided, however,* the Bid Deadline shall not apply and no additional Good Faith Deposit shall be required beyond the Good Faith Deposit previously submitted by a Qualified Bidder. Any Overbid must include, in addition to the amount and form of consideration of the Overbid, a description of all changes (if any) requested by the Qualified Bidder to the Stalking Horse Purchase Agreement or a previously submitted Modified Purchase Agreement, in connection therewith. Any Overbid must remain open and binding on the Bidder until and unless the Trustee accepts a higher Overbid (except to the extent required to serve as the Backup Bid).

The Trustee may require a Bidder submitting an Overbid, as part of its Overbid, to provide written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee) demonstrating such Bidder's ability to close the transaction proposed by such Overbid; *provided, however*, this shall not apply to an Overbid by the Stalking Horse Purchaser.

c.    Announcing Overbids

The Trustee shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the estates based on, *inter alia*, the Bid Assessment Criteria.

d.    Consideration of Overbids

Subject to the deadlines set forth herein, the Trustee, in consultation with the Consultation Parties, reserves the right, in his reasonable business judgment to make one or more adjournments in the Auction to, among other things, facilitate discussions between the Trustee and individual Bidders and allow individual Bidders to consider how they wish to proceed.

**3.    No Collusion; Good-Faith *Bona Fide* Offer**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction (i) it has not engaged in any collusion with respect to the Sale or bidding (including it has no agreement with any other Bidder or Qualified Bidder to control the price) and (ii) its Qualified Bid is the good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**4.    Backup Bidder**

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party(ies) with the next highest or otherwise best Qualified Bid (or combination of Qualified Bids) at the Auction, as determined by the Trustee in the exercise of their business judgment, shall be required to serve as backup bidder (the "**Backup Bidder**").  The Backup

Bidder shall be required to keep its initial Bid(s) (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "**Backup Bid**") open and irrevocable until the earlier of 5:00 p.m. (prevailing Central Time) on the date that is twenty-five (25) days after the date of the Sale Hearing (the "**Outside Backup Date**") or the closing of the transaction with the Successful Bidder. Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Trustee, in consultation with the Consultation Parties, may designate the Backup Bidder to be the new Successful Bidder, and the Trustee will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. The closing date to consummate the transaction with the Backup Bidder shall be no later than the later of twenty-five (25) days after the date the Trustee provide notice to the Backup Bidder that the Successful Bidder failed to consummate a sale and the Trustee desire to consummate the transaction with the Backup Bidder.

### 5.    Additional Procedures

The Trustee, in consultation with the Consultation Parties, reserves the right to announce additional procedural rules that he deems reasonable under the circumstances for conducting the Auction, including but not limited to: (a) adjourning the Auction at the Auction and/or adjourning a Sale Hearing in open court without further notice; (b) reopening an Auction to consider further Bids or Overbids; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (*e.g.*, the amount of time to make subsequent Overbids, the amount of the Minimum Overbid Increment, etc.); or (d) cancelling the Auction, in all cases, subject to the Stalking Horse Purchase Agreement, the Bid Procedures, and the Bid Procedures Order.

### 6.    Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders, and all Bidders at the Auction, shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Purchase Agreement, the Auction, or the construction and enforcement of any Transaction Documents.

### 7.    Closing the Auction

The Auction shall continue until there is only one Qualified Bid or combination of Qualified Bids that the Trustee determines in his reasonable business judgment after consultation with their financial and legal advisors, is the highest and best Qualified Bid(s) at the Auction (the "**Successful Bid**" and the Bidder(s) submitting such Successful Bid, the "**Successful Bidder**"). In making this decision, the Trustee, in consultation with their financial and legal advisors any lender holding a secured claim on any Real Property, shall consider the Bid Assessment Criteria.

The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid, and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid.  The ultimate Successful Bidder will

be decided at the conclusion of the Auction.  The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid.  Promptly following the Trustee's selection of the Successful Bid and the conclusion of the Auction, the Trustee shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court a notice of the Successful Bid and Successful Bidder.  The Trustee shall not consider any Bids submitted after the conclusion of the Auction.

### 8.    Expense Reimbursement and Breakup Fee

To the extent payable in accordance with any Stalking Horse Purchase Agreement, the Breakup Fee shall be paid as provided in the Stalking Horse Purchase Agreement and shall constitute an allowed administrative expense claim against the estates pursuant to Bankruptcy Code §§ 363, 503(b), and 507(a)(2).

### SALE HEARING

The Bankruptcy Court has scheduled a hearing (the "**Sale Hearing**") on **[_____ xx], 2023, at [_____] a.m./p.m.**  (**prevailing Central  Time**), at which hearing the Trustee may, in his discretion, seek approval of the Sale to the Successful Bidder and, in the alternative, the Backup Bidder.  The Bankruptcy Court will hear and determine all remaining matters relating to the Sale at the Sale Hearing.

Objections to the Sale of Real Property to the Successful Bidder or Backup Bidder, other than the Stalking Horse Purchaser, must be filed, comply with the Bankruptcy Rules and Local Rules, and be served so as to be actually received by no later than **5:00 p.m. (prevailing Central Time) on [_____ xx], 2023** (except for any objection that arises at the Auction) must be served on the following: (a) Derek Henderson, Chapter 11 Trustee derek@derekhendersonlaw.com; (b) Douglas C. Noble, dnoble@mmqnlaw.com, counsel to the Trustee; (c) Paul Douglas Stewart, dstewart@stewartrobbins.com, counsel for the Committee; (d) the Office of the United States Trustee, Attn: Sammye S. Tharp sammye.s.tharp@usdoj.gov; (e) D. Andrew Phillips, aphillips@mitchellmcnutt.com, and James P. Wilson, jwilson@mithchellmcnutt.com, counsel for Renasant Bank and BNA; and (f) Michael Brandess, michael.brandess@huschblackwell.com, Scott Opincar, sopincar@mcdonaldhopkins.com, and Michael Coury, mcoury@glanklerbrown.com, counsel to David A. Belford Separate Property Trust and United Finance Services, LLC.

### RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Trustee, but shall not become property of the estates absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing.

The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of (i) five (5) business days after the closing of the Sale with the Successful Bidder and (ii) the Outside Backup Date. Upon the return of the Good Faith Deposits,

their respective owners shall receive any and all interest that will have accrued thereon, if any. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

If a Successful Bidder fails to close an approved Sale because of its own breach or failure to perform, the defaulting Successful Bidder's deposit, if any, shall be forfeited to the estates, and the Trustee specifically reserves the right to seek all available damages from the defaulting Successful Bidder.  The deposit, if any, of the Backup Bidder shall be held by the Trustee until the earlier of five (5) business days after (a) the closing of the Sale with the Successful Bidder and (b) the Outside Backup Date; provided, however, in the event the Successful Bidder does not consummate the transaction as described above and the Trustee provides notice to the Backup Bidder, the Backup Bidder's deposit shall be held until the closing of the transaction with the Backup Bidder. In the event the Trustee fail to consummate a transaction with the Backup Bidder as described above, the Backup Bidder's deposit shall be forfeited to the Trustee' estates, and the Trustee specifically reserves the right to seek all available damages from the defaulting Backup Bidder. Notwithstanding anything to the contrary herein, the Stalking Horse Purchaser shall have the right, but not the obligation, to serve as a Backup Bidder in the event that the Stalking Horse Purchaser is not selected as the Successful Bidder.

## RESERVATION OF RIGHTS

Except as otherwise provided in the Stalking Horse Purchase Agreement, the Bid Procedures or the Bid Procedures Order, Trustee reserves the right to: (a) determine which Bidders are Potential Bidders and which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (d) reject any Bid, other than that of the Stalking Horse Bidder, that in the Trustee's sole judgment is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code, or (3) contrary to the best interests of any Debtor and its estate; (e) waive non-compliance with any of the terms and conditions set forth herein as it determines to be in the best interests of any Debtor and its estate, its creditors, and other parties in interest; (f) impose additional terms and conditions with respect to all Potential Bidders and Bidders; (g) extend the deadlines set forth herein; (h) in consultation with the Consultation Parties, continue or cancel the Sale Hearing in open court, or by filing a notice on the docket of the Bankruptcy Case, without further notice to creditors or other parties in interest; and (i) in consultation with the Consultation Parties, implement additional procedural rules that Trustee determines, in his business judgment, will better promote the goals of the bidding process and discharge Trustee's fiduciary duties; *provided, however*, that any modification or additions to the Bid Procedures shall not be materially inconsistent with the Bid Procedures Order or any other order of the Bankruptcy Court, the Bankruptcy Code, or the Federal Rules of Bankruptcy Procedure, and shall be disclosed to each Qualified Bidder.

# EXHIBIT

# 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| UNITED FURNITURE INDUSTRIES, INC., *et al.*[1] | ) | Case No. 22-13422-SDM |
| | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF (I) SALE OF REAL PROPERTY,
(II) [DESIGNATION OF STALKING HORSE PURCHASER,]
(II) BID PROCEDURES, DATES AND TIMELINE FOR AUCTION, AND
(III) SALE HEARING TO APPROVE SALE OF REAL PROPERTY
[identify property]**

  **PLEASE TAKE NOTICE THAT** Derek Henderson, Chapter 11 Trustee ("**Trustee**") of the bankruptcy estates of the above-captioned Debtors (the "**Debtors**"), intends to sell the following described real property (the "**Real Property**"), free and clear of all liens, claims, encumbrances and other interests pursuant to § 363 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**"):

**[identify property]**

  **PLEASE TAKE FURTHER NOTICE** that on **[_____], 2023**, the Bankruptcy Court entered an Order (the "**Bid Procedures Order**") approving the Bid Procedures[2] attached hereto as <u>Exhibit A</u>. In accordance with the Bid Procedures, the following key dates and times are hereby established with respect to the proposed Sale of the Real Property:

---

[1] The Debtors in these Chapter 11 cases, and the last four digits of each Debtor's federal tax identification number, are as follows: United Furniture Industries, Inc. (2576); United Furniture Industries NC, LLC.(9015); United Furniture Industries CA, Inc. (9966); FW Acquisition, LLC (2133); Furniture Wood, Inc. (9186);United Wood Products, Inc. (1061); Associated Bunk Bed Company (0569); UFI Royal Development, LLC (8143); UFI Exporter, Inc. (6518); UFI Transportation, LLC (9471); and LS Logistics, LLC (7004).

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Bid Procedures.

(All times are prevailing Central Time)

- **[_____ xx], 2023 at 5:00 p.m.:**  Deadline to object to designation of Stalking Horse Purchaser and proposed Bid Protections, if any

- **[_____ xx], 2023 at 5:00 p.m.:**  Deadline to submit Bid to be considered for the Auction

- **[_____ xx], 2023:**  Advise bidders and Consultation Parties of any Qualified Bids

- **[_____ xx], 2023 at 5:00 p.m.:**  Proposed date of Auction

- **[_____ xx], 2023 at 5:00 p.m.:**  Trustee to file Notice of Successful Bidder at the conclusion of the Auction

- **[_____ xx], 2023 at 5:00 p.m.:**  Deadline to file and serve objections to Sale

- **[_____ xx], 2023 at ___ a.m./p.m.:**  Sale Hearing

### STALKING HORSE PURCHASE AGREEMENT; BID PROTECTIONS

**PLEASE TAKE FURTHER NOTICE** that, a purchase and sale agreement (collectively with all exhibits and schedules, the "**Stalking Horse Purchase Agreement**"), dated as of [_____], 2023, has been entered into between Trustee and [_____] (the "**Stalking Horse Purchaser**") regarding the Real Property.  The Stalking Horse Purchase Agreement is attached hereto as <u>Exhibit B</u>.  The following terms are material terms for the proposed Sale of the Real Estate agreed to between the Trustee and the Stalking Horse Purchaser, all of which are more fully set forth in the Stalking Horse Purchase Agreement:

- Purchase Price:          $_____
- Breakup Fee:            $_____
- Diligence Materials:    $_____
- [other]

**PLEASE TAKE FURTHER NOTICE** that **objections only to the designation of the Stalking Horse Purchaser, the Breakup Fee or any other Bid Protections** <u>shall be filed, comply with the Bankruptcy Rules and Local Rules, and be served on the following so as to be actually received by no later than **5:00 p.m. (prevailing Central Time) on [_____ xx], 2023**</u>: (a) Derek Henderson, Chapter 11 Trustee derek@derekhendersonlaw.com; (b) Douglas C. Noble, dnoble@mmqnlaw.com, counsel to the Trustee; (c) counsel to the Committee, Paul Douglas Stewart, dstewart@stewartrobbins.com; (d) the Office of the U.S. Trustee, Attn: Sammye S. Tharp sammye.s.tharp@usdoj.gov; [(e) _____, counsel to Stalking Horse Purchaser;] (f) counsel for Renasant Bank and BNA, Attn: D. Andrew Phillips, aphillips@mitchellmcnutt.com

2

and James P. Wilson, jwilson@mithcellmcnutt.com; and (g) counsel to David A. Belfort Separate Property Trust and United Finance Services, LLC, Attn: Michael Brandess, michael.brandess@huschblackwell.com, Scott Opincar, sopinmcar@mcdonalchopkins.com, and Michael P. Coury, mcoury@glanklerbrown.com.  If no objection is timely filed, the Stalking Horse Purchase Agreement and Bid Protections shall be deemed approved.  If an objection is filed, the Trustee shall request an expedited hearing to resolve the objection.

## BID DEADLINE; AUCTION

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bidding Procedures Order, Bids for the Real Property shall be accepted until [_____], 2023 at 5:00 p.m. (Prevailing Central Time) (the "Bid Deadline").  You are instructed to refer to the Bid Procedures to determine the requirements for submitting a Bid.  A Bid received from a Bidder on or before the Bid Deadline that meets the requirements set forth in the Bidding Procedures shall constitute a "Qualified Bid".

PLEASE TAKE FURTHER NOTICE that if a Qualified Bid that is a valid Initial Overbid, other than that submitted by the Stalking Horse Purchaser, is received by the Bid Deadline, the Trustee will hold an Auction on [_____], 2023 at [___] a.m/p.m. (Prevailing Central Time) at [_____]. If no Qualified Bids other than the Stalking Horse Bid are submitted, then no Auction will be held.

## SALE HEARING

PLEASE TAKE FURTHER NOTICE that a hearing will be held on [_____], 2023 at [___] a.m (Prevailing Central Time) to approve the sale of the Real Property to the Successful Bidder (the "Sale Hearing") before the Honorable Selene Dunn Maddox, United States Bankruptcy Court for the Northern District of Mississippi, in the U.S. Bankruptcy Courthouse, Aberdeen, Mississippi. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by filing a notice on the Bankruptcy Court's docket for this Bankruptcy Case.

PLEASE TAKE FURTHER NOTICE that objections to the Sale, if any, shall be filed, comply with the Bankruptcy Rules and Local Rules, and be served on the following so as to be actually received by no later than 5:00 p.m. (prevailing Central Time) on [_____ xx], 2023: (a) Derek Henderson, Chapter 11 Trustee derek@derekhendersonlaw.com; (b) Douglas C. Noble, dnoble@mmqnlaw.com, counsel to the Trustee; (c) counsel to the Committee, Paul Douglas Stewart, dstewart@stewartrobbins.com; (d) the Office of the U.S. Trustee, Attn: Sammye S. Tharp sammye.s.tharp@usdoj.gov; [(e) _____, counsel to Stalking Horse Purchaser;] (f) counsel for Renasant Bank and BNA, Attn: D. Andrew Phillips, aphillips@mitchellmcnutt.com and James P. Wilson, jwilson@mithcellmcnutt.com; and (g) counsel to David A. Belford Separate Property Trust and United Finance Services, LLC, Attn: Michael Brandess, michael.brandess@huschblackwell.com, Scott Opincar, sopinmcar@mcdonalchopkins.com, and Michael P. Coury, mcoury@glanklerbrown.com.

**PLEASE TAKE FURTHER NOTICE** THAT ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE MAY BE FOREVER BARRED AND ESTOPPED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AFFECTED THEREUNDER.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Sale is subject to the full terms and conditions of the Bid Procedures Order and Bid Procedures, which shall control in the event of any conflict, and Trustee encourages parties in interest to review such documents in their entirety. A copy of all documents and submissions relating to the Sale may be accessed at no cost from the website of the Trustee's notice and claims agent, Epiq Corporate Restructuring, at the following website: https://dm.epiq11.com/UnitedFurniture.

THIS the ____ day of ____, 2023.

Respectfully submitted,

**DEREK A. HENDERSON,**
**Chapter 11 Trustee of**
**UNITED FURNITURE INDUSTRIES, INC.,** *et al.*

By:  */s/ Douglas C. Noble*

Douglas C. Noble, MS Bar No. 10526
**McCraney | Montagnet | Quin | Noble PLLC**
602 Steed Road • Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
Facsimile:  (601) 510-2939
Email:  dnoble@MMQNLaw.com

and

Derek A. Henderson, MS Bar No. 2260
Anna Claire Henderson, MS Bar No. 106230
1765-1 Lelia Drive, Suite 103
Jackson, Mississippi 39216
Telephone:  (601) 948-3167
Email: derek@derekhendersonlaw.com

***Counsel to Chapter 11 Trustee***

## **CERTIFICATE OF SERVICE**

I do hereby certify that the foregoing pleading was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically.

SO CERTIFIED, this the _____ day of _____, 2023.


_/s/ *Douglas C. Noble*_____

# EXHIBIT

# A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| UNITED FURNITURE INDUSTRIES, INC., *et al.*[1] | ) | Case No. 22-13422-SDM |
| | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |
| | ) | |

## BID PROCEDURES

On [      ], 2023, the Bankruptcy Court entered an order [Dkt #___] (the "**Bid Procedures Order**") approving, among other things, these bid procedures (the "**Bid Procedures**"). These Bid Procedures set forth the process by which the Trustee is authorized to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of real property assets of one or more of the Debtors (the "**Real Property**"). Subject to the entry of the Sale Order, the Sale may be effected by the Trustee with or without designating a Stalking Horse Purchaser. If a Stalking Horse Purchaser is designated, the terms and conditions of the proposed Sale will be set forth in a Stalking Horse Purchase Agreement. In either instance, all Sales will be subject to higher or otherwise better Bids (as defined below) in accordance with these Bid Procedures. Pursuant to the Bid Procedures, the Trustee will determine the highest or otherwise best price for the sale of Real Property in his sole discretion but will consult with his real estate advisors at B. Riley Real Estate, LLC ("**B.Riley**"), the Official Committee of Unsecured Creditors (the "**Committee**"), United Finance Services, LLC ("**Postpetition Lender**") and any holder of a valid lien on any of the Real Property subject of the Sale ("**Secured Creditor**") (collectively, the "**Consultation Parties**").

## IMPORTANT DATES

The following dates and times shall govern and apply to the Sale of Real Property. Your rights and/or ability to participate in the Sale process, the Auction or the Sale Hearing shall be subject to the terms set forth below:

---

[1] The Trustee in these Chapter 11 cases, and the last four digits of each Debtor's federal tax identification number, are as follows: United Furniture Industries, Inc. (2576); United Furniture Industries NC, LLC.(9015); United Furniture Industries CA, Inc. (9966); FW Acquisition, LLC (2133); Furniture Wood, Inc. (9186);United Wood Products, Inc. (1061); Associated Bunk Bed Company (0569); UFI Royal Development, LLC (8143); UFI Exporter, Inc. (6518); UFI Transportation, LLC (9471); and LS Logistics, LLC (7004).

(All times are prevailing Central Time)

- **[Day 0]**, 2023 at 5:00 p.m.:  Designation of Stalking Horse Purchaser, if any, and issuance of Notice of Sale

- **[Day 5]**, 2023 at 5:00 p.m.:  Deadline to object to designation of Stalking Horse Purchaser and proposed Bid Protections, if any

- **[Day 20]**, 2023 at 5:00 p.m.:  Deadline to submit Bid to be considered for the Auction

- **[Day 27]**, 2023:  Advise bidders and Consultation Parties of any Qualified Bids

- **[Day 30-35]**, 2023 at 5:00 p.m.:  Proposed date of Auction

- **[One Day After Auction]**, 2023 at 5:00 p.m.:  Trustee to file Notice of Successful Bidder at the conclusion of the Auction

- **[Five Days After Auction]**, 2023 at 5:00 p.m.:  Deadline to file and serve objections to Sale

- **[TBD]**, 2023 at ___ a.m./p.m.:  Sale Hearing

## SALE OF REAL PROPERTY

**1.    Real Property to Be Sold Free and Clear**

The Trustee will seek to sell all of Debtors' right, title and interest in and to Real Property free and clear of all mortgages, conditional sales agreements, liens, encumbrances, leases, options, security interests, conveyances, conditions, restrictions, unrecorded easements, or other encumbrances, title exceptions, or other interests of any kind (collectively, "**Encumbrances**"), subject only to the lien for ad valorem taxes falling due after closing or any  additional exceptions approved by Successful Bidder in writing or otherwise required by law (collectively, "**Permitted Encumbrances**") to the maximum extent permitted under § 363 of the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the sale of Real Property with the same validity and priority as such Encumbrances applied against any Real Property at the time of the closing of the Sale.

**2.    As Is/Where Is**

Except as otherwise set forth in the purchase and sale agreement of the Successful Bidder or an order of the Bankruptcy Court approving a Sale (the "**Sale Order**"), the sale of Real Property pursuant to the Bid Procedures shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by Trustee or the estates.  By submitting a Bid, a Bidder shall be deemed to acknowledge and represent that it has had an

opportunity to conduct any and all due diligence regarding the Real Property prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Real Property in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Real Property, or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in these Bid Procedures or as set forth in the purchase and sale agreement of a Successful Bidder or the Sale Order.  Each Bidder shall be deemed to be familiar with the Real Property, be knowledgeable, and to understand and accept the risks inherent in the acquisition and ownership of the Real Property and its condition at the time of Closing. The Sale Order shall specifically include an injunction as to any future actions against the Real Property and Stalking Horse Purchaser or other Successful Bidder, as applicable, to the fullest extent allowed.

**BIDDING PROCESS**

**3.      Potential Bidders**

The Trustee's real estate advisor, B. Riley Real Estate, LLC ("**B. Riley**"), will identify and engage with parties potentially interested in and who it reasonably believes would have the financial resources to consummate a Sale ("**Potential Bidder**"), which includes both potential strategic and financial investors.  B. Riley will negotiate with all such parties to identify genuine interest and ability to close one or more Sales and to identify whether any such party should be designated as a Stalking Horse Purchaser (defined and described below).  Each Potential Bidder will be provided with a copy of these Bid Procedures and the Stalking Horse Purchase Agreement and other necessary documents or information.

**4.      Due Diligence Materials**

B. Riley has established and provided access to due diligence materials relating to the Real Property (the "**Diligence Materials**") held in an online data room (the "**Data Room**"). Included in the Data Room are, among other things, title work and preliminary title commitments, ALTA surveys, and Phase 1 environmental surveys obtained by the Trustee as to each parcel of Real Property to be included in a Sale.  No due diligence will continue after the Bid Deadline (defined below).

**5.      Selection of a Stalking Horse Purchaser**

The Trustee may, but is not obligated to, enter into an asset purchase agreement based on the Form Purchase Agreement (defined below) with a Stalking Horse Purchaser (a "**Stalking Horse Purchase Agreement**") for the Sale of Real Property to establish a minimum bid at the Auction.

The Stalking Horse Purchase Agreement may contain a breakup fee in an amount determined by the Trustee in his sole discretion, after consultation with B. Riley and the other Consultation Parties, to be commercially reasonable and customary for a transaction of the nature and amount of the subject Sale (the "**Breakup Fee**") together with other exclusive rights

protections and privileges afforded the Stalking Horse Purchaser under the Stalking Horse Purchase Agreement (together with the Breakup Fee, the "**Bid Protections**"). The Breakup Fee shall be an allowed administrative expense.  In the event the Trustee becomes obligated to pay the Breakup Fee, the Breakup Fee shall be payable solely as follows: (a) from the proceeds of a closed sale of the Real Property to a Successful Bidder (as defined herein), if the Purchaser is not the Successful Bidder or (b) from the forfeited Good Faith Deposit (as defined herein) of a Successful Bidder if: (i) such Successful Bidder is not the Purchaser, (ii) such Successful Bidder does not close the Sale of the Real Property and forfeits its Good Faith Deposit under the terms of the Successful Bidder's Modified Purchase Agreement (as defined herein), and (iii) the Purchaser is not the Backup Bidder (as defined herein).  If earned, a Breakup Fee may be applied as a credit by a Stalking Horse Purchaser in any Overbid later made by a Stalking Horse Purchaser at the Auction.

If the Trustee selects a party to serve as the Stalking Horse Purchaser on or before [_____ xx], 2023, upon such selection, the Trustee shall file the Notice of Sale with the Bankruptcy Court and provide five (5) days' notice of and an opportunity to object to the designation of the Stalking Horse Purchaser and the Bid Protections set forth in the Stalking Horse Purchase Agreement.  If an objection is timely filed, the Trustee will request the Bankruptcy Court's expedited consideration of any objection; only issues attendant to the designation of the Stalking Horse Purchaser and the Bid Protections proposed to be granted thereto shall be considered and determined at that time.  Absent objection, the Trustee may submit an order to the Bankruptcy Court under certificate of counsel approving the designation of the Stalking Horse Purchaser and the Bid Protections.

**6.     Qualification and Bidding Process**

To be eligible to participate in an Auction, each offer, solicitation, or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), must be determined by the Trustee to satisfy each of the following conditions:

a.    **Good Faith Offer; Partial Bids:**  Each Bid must constitute a good faith, bona fide offer to purchase all or a portion of the Real Property subject to the Sale.

b.    **Good Faith Deposit:**  Each Bid (other than the Stalking Horse Bid) must be accompanied by a deposit in the amount of ten percent (10%) of the Bid's proposed cash purchase price to an escrow account to be identified and established by the Trustee (the "**Good Faith Deposit**").

c.    **Terms:**  A Bid must be on terms that are substantially the same or better than the terms of the Stalking Horse Purchase Agreement, if applicable, as determined by the Trustee.

d.    **Executed Agreement**:  To be deemed a "**Qualifying Bid**", a Bid must be (i) if a Stalking Horse Purchaser has been designated for the Real Property, substantially the same terms as, or terms more favorable to the Trustee and the estates than, the terms set forth in a Stalking Horse Purchase Agreement, if applicable and include a redline marked against the Stalking Horse Purchase

Agreement; and (ii) otherwise, in the form of the Purchase Agreement to be included in the Data Room (the "**Form Purchase Agreement**") and include a redline marked against the Form Purchase Agreement. A Bid, other than the bid of the Stalking Horse Purchaser, if any, will not be considered qualified for the Auction if (i) such Bid contains additional material representations and warranties, covenants, closing conditions, termination rights other than as may be included in the Form Purchase Agreement or the Stalking Horse Purchase Agreement (it being agreed and understood such Bid shall modify the Stalking Horse Purchase Agreement as needed to comply in all respects with the Bid Procedures Order and will remove provisions that apply only to the Stalking Horse Purchaser such as the Bid Protections) (a "**Modified Purchase Agreement**"); (i) such Bid is not received by the Trustee in writing on or prior to the Bid Deadline, and (iii) such Bid does not contain evidence that the Person submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby, including proof the Good Faith Deposit has been made. Each Modified Purchase Agreement must provide a commitment to close within two (2) business days after all closing conditions are met.

e. **Amount of Bid:** Each Bid or combination of Bids must state the amount of cash offered for the Real Property (the "**Purchase Price**") and, if a Bid is made on more than one Real Property asset, a Bid shall state the amount of the Purchase Price allocated to each Real Property asset.  The Purchase Price shall include an amount equal to the due diligence expenses incurred by the Trustee in procuring the Diligence Materials provided to Interested Parties in aid of Sales of Real Property, which amount shall be repaid at Closing of the Sale. If there is a Stalking Horse Purchaser, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of the purchase price under the Stalking Horse Purchase Agreement plus the Breakup Fee and the Minimum Overbid Increment (the "**Initial Overbid**").

f. **Corporate Authority:** Written evidence reasonably acceptable to the Trustee demonstrating appropriate corporate authorization to consummate the proposed transaction; *provided, however*, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the transaction by the equity holder(s) of such Bidder.

g. **Disclosure of Identity of Potential Bidder**: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Real Property or otherwise participating in connection with such Bid (including the identity of any parent/affiliate companies of such entity), and the complete terms of any such participation, including any connections, agreements, arrangements or understanding with the Trustee, the Stalking Horse Purchaser, or any other known, potential, or prospective bidder, or Potential Bidder, or any officer, director, or equity holder of the Trustee. Under no circumstances shall any

undisclosed principals, equity holders or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom the Trustee's advisors should contact regarding such Bid.

h. **Proof of Financial Ability to Perform:** Written evidence the Trustee reasonably conclude demonstrates the Bidder has the necessary financial ability to close the transaction. Such information should include, *inter alia*, the following:

    (a)   contact names and numbers for verification of financing sources,

    (b)   written evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the transaction;

    (c)   the Bidder's current financial statements (audited if they exist);

    (d)   a description of the Bidder's pro forma capital structure; and

    (e)   any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee demonstrating such Bidder can close the transaction; *provided, however*, the Trustee shall determine in their reasonable discretion whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

i. **Regulatory and Third-Party Approvals**: A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Sale, and the time period within which the Bidder expects to receive such regulatory and third-party approvals.

j. **Conditions/Contingencies:** A Bid may not (i) contain representations and warranties, covenants or termination rights which Trustee, in his business judgment, determines to be more onerous than those set forth in the Stalking Horse Purchase Agreement (when considering all such provisions as a whole) or (ii) be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of unperformed due diligence.

k. **Irrevocable:** A Bid (other than the Bid of the Stalking Horse Purchaser) must be irrevocable until two (2) business days after the closing of the Sale. Each Bidder (other than the Stalking Horse Purchaser) further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Backup Bidder (as defined below) as may be designated by the Trustee at the Sale Hearing, in the event the Successful Bidder fails to close as provided in

the Successful Bidder's purchase agreement, as modified, if at all, and the
Sale Order. The Stalking Horse Purchaser shall have the right, but not the
obligation, to serve as a Backup Bidder if the Stalking Horse Purchaser is not
the Successful Bidder.

l.  **Time Frame for Closing:** A Bid by a Bidder must be reasonably likely
(based on antitrust or other regulatory issues, experience, and other
considerations) to be consummated, if selected as the Successful Bid, within a
time frame acceptable to the Trustee but in no event later than two (2) days
after all closing conditions are met.

m.  **Consent to Jurisdiction:** Each Bidder must submit to the jurisdiction of the
Bankruptcy Court to enter any order or orders, which shall be binding in all
respects, in any way related to the Trustee, the Bid Procedures, the Auction
and the Sale.

n.  **Disclaimer of Fees:** Each Bid (other than the Stalking Horse Purchase
Agreement) must disclaim any right to receive a fee analogous to a breakup
fee, expense reimbursement, termination fee, or any other similar form of
compensation. For the avoidance of doubt, no Qualified Bidder (other than the
Stalking Horse Purchaser) will be permitted to request, nor be granted by the
Trustee, at any time, whether as part of the Auction or otherwise, a breakup
fee, expense reimbursement, termination fee, or any other similar form of
compensation. By submitting its Bid, each Bidder (other than the Stalking
Horse Purchaser) is agreeing to refrain from and waive any assertion or
request for reimbursement on any basis, including pursuant to Bankruptcy
Code § 503(b).

o.  **Bid Deadline:** The Trustee must receive a Bid in writing, on or before [____
xx], 2023 at 5:00 p.m. (prevailing Central Time) or such later date as may be
agreed to by the Trustee (the "**Bid Deadline**").  Bids must be sent to the
following by the Bid Deadline to be considered: (a) Michael Jerbich, B. Riley
Real Estate, LLC mjerbich@brileyfin.com (b) Derek Henderson, Chapter 11
Trustee derek@derekhendersonlaw.com; (c) Douglas C. Noble, counsel to the
Trustee, dnoble@mmqnlaw.com; and (d) Paul Douglas Stewart,
dstewart@stewartrobbins.com, counsel to Committee.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements
shall constitute a "**Qualified Bid**," and such Bidder shall constitute a "**Qualified Bidder**."
Within seven (7) days after the Bid Deadline, the Trustee and B. Riley will determine which
Bidders are Qualified Bidders and will notify such Bidders whether Bids submitted constitute
Qualified Bids to enable such Qualified Bidders to attend the Auction. Any Bid that is not
deemed a Qualified Bid will not be considered by the Trustee.  To the extent there is any dispute
regarding whether a bidder is a Qualified Bidder, such dispute may be raised with the
Bankruptcy Court on an expedited basis prior to the commencement of the Auction. A Stalking
Horse Purchaser shall be deemed to be a Qualified Bidder.

Between the date that the Trustee notifies a Bidder that it is a Qualified Bidder and the Auction, the Trustee may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Trustee, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; *provided* that any such Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bid Procedures.

Prior to the Auction, the Trustee will evaluate Qualified Bids and identify the Qualified Bid that is, in the Trustee's reasonable business judgment, the highest or otherwise best bid (the "**Starting Bid**"). If there is a Stalking Horse Bid, the Starting Bid shall equal an amount of cash equal to the Initial Overbid. In making such determination, the Trustee will consider, among other things, the execution risk attendant to any submitted bids. Within twenty-four (24) hours of such determination, but in no event later than twenty-four (24) hours before the start of the Auction, the Trustee will (i) notify the Stalking Horse Purchaser as to which Qualified Bid is the Starting Bid and (ii) distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

## CREDIT BID RIGHTS

Any Secured Creditor that has a valid and perfected lien on any of the Real Property (including, for the avoidance of doubt, the Postpetition Lender) shall have the right to credit bid all or a portion of the value of such Secured Creditor's claim within the meaning of § 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral over which such Secured Creditor has a valid lien; and *provided further* that any credit bid by a Secured Creditor shall contain a cash component sufficient to repay in full in cash all (x) secured claims of a senior Secured Creditor, if any (unless such senior Secured Creditor agrees to a different treatment), (y) the Breakup Fee, if a Stalking Horse Purchaser is designated and is not the Successful Bidder, and (z) all other cash items (including any applicable surcharges assessed against the Real Property subject of the Sale) required to be paid by a cash buyer at Closing. Notwithstanding anything to the contrary contained herein or in the Bid Procedures Order, (i) the Secured Creditors, or their respective designee or administrative agent, as applicable, have the right, but not the requirement, to credit bid up to the full amount of their secured indebtedness, as applicable, at or before the Auction in accordance with the terms thereof and pursuant to § 363(k) of the Bankruptcy Code, and (ii) any Bid submitted by a Secured Creditor, whether as a Stalking Horse Purchaser or otherwise, shall be deemed a Qualified Bid notwithstanding the requirements of the Bid Procedures (including, for the avoidance of doubt, the Good Faith Deposit requirement, which shall not be applicable to any Credit Bid by a Secured Creditor).

## AUCTION

If two or more Qualified Bids are received by the Bid Deadline, the Trustee will conduct the Auction to determine the highest and best Qualified Bid or combination of Qualified Bids. This determination shall take into account any factors the Trustee reasonably deem relevant to the value of the Qualified Bid to the estates, including but not limited to the following: (a) the

amount and nature of the consideration; (b) the ability of the Qualified Bidder to close the proposed Transaction and the conditions related thereto, and the timing thereof; (c) whether the Bid is a bulk bid for all of the Trustee' assets or a partial bid; (d) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (e) any purchase price adjustments; (f) the impact of the Transaction on any actual or potential litigation; (g) the net after-tax consideration to be received by the Trustee' estates; and (h) the tax consequences of such Qualified Bid (collectively, the "**Bid Assessment Criteria**").

If no Qualified Bids other than the Stalking Horse Bid are received prior to the Bid Deadline, then the Auction will not occur, the Stalking Horse Purchase Agreement may be deemed the Successful Bid, and, subject to the termination rights under the Stalking Horse Purchase Agreement, the Trustee will pursue entry of an order by the Bankruptcy Court authorizing the Sale to the Stalking Horse Purchaser as soon as practicable.

### PROCEDURES FOR AUCTION

The Auction, if necessary, will take place at [_____] on [_____ **xx], 2023 at ____ a.m./p.m. (prevailing Central Time)** or such later time on such day or other place as the Trustee shall notify all Bidders who have submitted Qualified Bids. Only the Stalking Horse Purchaser and such other Qualified Bidders will be entitled to make any Bids at the Auction.

### 1.    The Trustee Shall Conduct the Auction

The Trustee and his professionals shall direct and preside over the Auction, and the Auction shall be transcribed or videotaped. At the start of the Auction the Trustee shall describe the terms of the Starting Bid and provide each participant in the Auction with a copy of the Modified Purchase Agreement associated with the Starting Bid.

All Bids made at the Auction after the Trustee's announcement of the Starting Bid ("**Overbids**") shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The Trustee shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid and all Overbids. Upon the solicitation of each round of Overbids, the Trustee may announce a deadline (as the Trustee may, in his business judgment extend from time to time) by which time any Overbids must be submitted to the Trustee.

### 2.    Terms of Overbids

To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

a.    Minimum Overbid Increment

Any Overbid after the Initial Overbid shall be made in increments of at least [$_____] (the "**Minimum Overbid Increment**").  The Trustee shall provide all Consultation Parties with the amount of the Minimum Overbid Increment and an estimate of any surcharge amounts to be assessed against the Real Property at least forty-eight (48) hours prior to the Auction.

    b.      Remaining Terms Are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; *provided, however,* the Bid Deadline shall not apply and no additional Good Faith Deposit shall be required beyond the Good Faith Deposit previously submitted by a Qualified Bidder. Any Overbid must include, in addition to the amount and form of consideration of the Overbid, a description of all changes (if any) requested by the Qualified Bidder to the Stalking Horse Purchase Agreement or a previously submitted Modified Purchase Agreement, in connection therewith. Any Overbid must remain open and binding on the Bidder until and unless the Trustee accepts a higher Overbid (except to the extent required to serve as the Backup Bid).

The Trustee may require a Bidder submitting an Overbid, as part of its Overbid, to provide written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee) demonstrating such Bidder's ability to close the transaction proposed by such Overbid; *provided, however*, this shall not apply to an Overbid by the Stalking Horse Purchaser.

    c.      Announcing Overbids

The Trustee shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the estates based on, *inter alia*, the Bid Assessment Criteria.

    d.      Consideration of Overbids

Subject to the deadlines set forth herein, the Trustee, in consultation with the Consultation Parties, reserves the right, in his reasonable business judgment to make one or more adjournments in the Auction to, among other things, facilitate discussions between the Trustee and individual Bidders and allow individual Bidders to consider how they wish to proceed.

**3.      No Collusion; Good-Faith *Bona Fide* Offer**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction (i) it has not engaged in any collusion with respect to the Sale or bidding (including it has no agreement with any other Bidder or Qualified Bidder to control the price) and (ii) its Qualified Bid is the good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**4.      Backup Bidder**

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party(ies) with the next highest or otherwise best Qualified Bid (or combination of Qualified Bids) at the Auction, as determined by the Trustee in the exercise of their business judgment, shall be required to serve as backup bidder (the "**Backup Bidder**"). The Backup

Bidder shall be required to keep its initial Bid(s) (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "**Backup Bid**") open and irrevocable until the earlier of 5:00 p.m. (prevailing Central Time) on the date that is twenty-five (25) days after the date of the Sale Hearing (the "**Outside Backup Date**") or the closing of the transaction with the Successful Bidder. Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Trustee, in consultation with the Consultation Parties, may designate the Backup Bidder to be the new Successful Bidder, and the Trustee will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court.  The closing date to consummate the transaction with the Backup Bidder shall be no later than the later of twenty-five (25) days after the date the Trustee provide notice to the Backup Bidder that the Successful Bidder failed to consummate a sale and the Trustee desire to consummate the transaction with the Backup Bidder.

### 5.    Additional Procedures

The Trustee, in consultation with the Consultation Parties, reserves the right to announce additional procedural rules that he deems reasonable under the circumstances for conducting the Auction, including but not limited to: (a) adjourning the Auction at the Auction and/or adjourning a Sale Hearing in open court without further notice; (b) reopening an Auction to consider further Bids or Overbids; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (*e.g.*, the amount of time to make subsequent Overbids, the amount of the Minimum Overbid Increment, etc.); or (d) cancelling the Auction, in all cases, subject to the Stalking Horse Purchase Agreement, the Bid Procedures, and the Bid Procedures Order.

### 6.    Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders, and all Bidders at the Auction, shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Purchase Agreement, the Auction, or the construction and enforcement of any Transaction Documents.

### 7.    Closing the Auction

The Auction shall continue until there is only one Qualified Bid or combination of Qualified Bids that the Trustee determines in his reasonable business judgment after consultation with their financial and legal advisors, is the highest and best Qualified Bid(s) at the Auction (the "**Successful Bid**" and the Bidder(s) submitting such Successful Bid, the "**Successful Bidder**"). In making this decision, the Trustee, in consultation with their financial and legal advisors any lender holding a secured claim on any Real Property, shall consider the Bid Assessment Criteria.

The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid, and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid.  The ultimate Successful Bidder will

be decided at the conclusion of the Auction.  The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid.  Promptly following the Trustee's selection of the Successful Bid and the conclusion of the Auction, the Trustee shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court a notice of the Successful Bid and Successful Bidder.  The Trustee shall not consider any Bids submitted after the conclusion of the Auction.

### 8.    Expense Reimbursement and Breakup Fee

To the extent payable in accordance with any Stalking Horse Purchase Agreement, the Breakup Fee shall be paid as provided in the Stalking Horse Purchase Agreement and shall constitute an allowed administrative expense claim against the estates pursuant to Bankruptcy Code §§ 363, 503(b), and 507(a)(2).

## SALE HEARING

The Bankruptcy Court has scheduled a hearing (the "**Sale Hearing**") on **[_____ xx], 2023, at [____] a.m./p.m.  (prevailing Central  Time**), at which hearing the Trustee may, in his discretion, seek approval of the Sale to the Successful Bidder and, in the alternative, the Backup Bidder.  The Bankruptcy Court will hear and determine all remaining matters relating to the Sale at the Sale Hearing.

Objections to the Sale of Real Property to the Successful Bidder or Backup Bidder, other than the Stalking Horse Purchaser, must be filed, comply with the Bankruptcy Rules and Local Rules, and be served so as to be actually received by no later than **5:00 p.m. (prevailing Central Time) on [_____ xx], 2023** (except for any objection that arises at the Auction) must be served on the following: (a) Derek Henderson, Chapter 11 Trustee derek@derekhendersonlaw.com; (b) Douglas C. Noble, dnoble@mmqnlaw.com, counsel to the Trustee; (c) Paul Douglas Stewart, dstewart@stewartrobbins.com, counsel for the Committee; (d) the Office of the United States Trustee, Attn: Sammye S. Tharp sammye.s.tharp@usdoj.gov; (e) D. Andrew Phillips, aphillips@mitchellmcnutt.com, and James P. Wilson, jwilson@mithchellmcnutt.com, counsel for Renasant Bank and BNA; and (f) Michael Brandess, michael.brandess@huschblackwell.com, Scott Opincar, sopincar@mcdonaldhopkins.com, and Michael Coury, mcoury@glanklerbrown.com, counsel to David A. Belford Separate Property Trust and United Finance Services, LLC.

## RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Trustee, but shall not become property of the estates absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing.

The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of (i) five (5) business days after the closing of the Sale with the Successful Bidder and (ii) the Outside Backup Date. Upon the return of the Good Faith Deposits,

their respective owners shall receive any and all interest that will have accrued thereon, if any. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

If a Successful Bidder fails to close an approved Sale because of its own breach or failure to perform, the defaulting Successful Bidder's deposit, if any, shall be forfeited to the estates, and the Trustee specifically reserves the right to seek all available damages from the defaulting Successful Bidder.  The deposit, if any, of the Backup Bidder shall be held by the Trustee until the earlier of five (5) business days after (a) the closing of the Sale with the Successful Bidder and (b) the Outside Backup Date; provided, however, in the event the Successful Bidder does not consummate the transaction as described above and the Trustee provides notice to the Backup Bidder, the Backup Bidder's deposit shall be held until the closing of the transaction with the Backup Bidder. In the event the Trustee fail to consummate a transaction with the Backup Bidder as described above, the Backup Bidder's deposit shall be forfeited to the Trustee' estates, and the Trustee specifically reserves the right to seek all available damages from the defaulting Backup Bidder. Notwithstanding anything to the contrary herein, the Stalking Horse Purchaser shall have the right, but not the obligation, to serve as a Backup Bidder in the event that the Stalking Horse Purchaser is not selected as the Successful Bidder.

## RESERVATION OF RIGHTS

Except as otherwise provided in the Stalking Horse Purchase Agreement, the Bid Procedures or the Bid Procedures Order, Trustee reserves the right to: (a) determine which Bidders are Potential Bidders and which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (d) reject any Bid, other than that of the Stalking Horse Bidder, that in the Trustee's sole judgment is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code, or (3) contrary to the best interests of any Debtor and its estate; (e) waive non-compliance with any of the terms and conditions set forth herein as it determines to be in the best interests of any Debtor and its estate, its creditors, and other parties in interest; (f) impose additional terms and conditions with respect to all Potential Bidders and Bidders; (g) extend the deadlines set forth herein; (h) in consultation with the Consultation Parties, continue or cancel the Sale Hearing in open court, or by filing a notice on the docket of the Bankruptcy Case, without further notice to creditors or other parties in interest; and (i) in consultation with the Consultation Parties, implement additional procedural rules that Trustee determines, in his business judgment, will better promote the goals of the bidding process and discharge Trustee's fiduciary duties; *provided, however*, that any modification or additions to the Bid Procedures shall not be materially inconsistent with the Bid Procedures Order or any other order of the Bankruptcy Court, the Bankruptcy Code, or the Federal Rules of Bankruptcy Procedure, and shall be disclosed to each Qualified Bidder.

# EXHIBIT
# B

# PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement") is made and entered into on this the _____ day of _____, 2023 (the "Execution Date") by and between _____ (hereinafter called "Purchaser"), and [United Furniture Industries, Inc./United Furniture Industries NC, LLC, a _____], by Derek Henderson, Chapter 11 Trustee (the "Seller"; together with the Purchaser, the "Parties" and each a "Party"), for and in consideration of the real property and improvements herein described. This Agreement is subject to and conditioned upon approval by the United States Bankruptcy Court for the Northern District of Mississippi (the "Bankruptcy Court") in the jointly affiliated cases of United Furntiure Industries, Inc., *et al.* (as applicable to the Seller debtor, the "Debtor"), Case No. 22-14322-SDM (the "Bankruptcy Case") filed pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code"). The effective date of this Agreement (the "Effective Date") shall be deemed to be the date on which an order (the "Sale Order") approving the proposed sale that is contemplated by the terms of this Agreement (the "Sale") is entered by the Bankruptcy Court and becomes final and non-appealable.

## WITNESSETH:

That the parties hereto in consideration of the mutual promises and covenants hereinafter set forth do hereby agree that Seller promises to sell and Purchaser promises to purchase, subject to the terms and conditions below, that certain real property and improvements owned by Seller and situated in _____, consisting of approximately _____ (___) acres, and said property being more particularly described and/or depicted in Exhibit "A" attached hereto and made a part hereof (the "Real Property").

1. **Purchase and Sale of Real Property**. Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, at the Closing of the Sale, Seller shall convey the Real Property to Purchaser by Trustee's Deed in the form customarily used in similar transactions and approved and prepared by Purchaser, free and clear of all mortgages, conditional sales agreements, liens, encumbrances, leases (other than those currently in existence and reviewed and approved by Purchaser), options, security interests, conveyances, conditions, restrictions, unrecorded easements, or other encumbrances, title exceptions, or other interests of any kind (collectively, "Encumbrances"), subject only to the lien for *ad valorem* taxes falling due after Closing or any additional exceptions approved by Purchaser in writing or otherwise required by law (collectively, "Permitted Encumbrances") to the maximum extent permitted under Section 363 of the Bankruptcy Code.

2. **Purchase Price.** The total purchase price (the "Purchase Price") shall be _____ and No/100 Dollars ($_____.00). Included in the Purchase Price shall be all amounts to be reimbursed to Seller incurred in procuring the Diligence Materials (as defined in Section 9, below) pertaining to the Real Property. Costs for such Diligece Materials shall be deducted from the Purchase Price and repaid to Seller at Closing.

3. **Terms of Payment.** The entire Purchase Price shall be paid in cash, or equivalent, at the Closing, and shall not include any financing contingency.

4.      **Good Faith Deposit.**  Purchaser shall deposit the sum of _____ Dollars ($_____.00) (the "Good Faith Deposit"), to an escrow account maintained by First American Title Insurance Company or its agent or designee ("Escrow Agent"). The Good Faith Deposit deposit shall grant the Purchaser the exclusive right and privilege to serve as the Stalking Horse Purchaser for the Real Property and to the protections afforded this Agreement. The Good Faith Deposit shall be fully refundable as set forth by the terms of this Agreement. The Parties agree and stipulate that the Good Faith Deposit shall not be deemed to constitute property of the Debtor's bankruptcy estate under the Bankruptcy Code, and the Debtor's estate shall have no interest of any kind under Chapter 5 of the Bankruptcy Code or applicable law (equitable or otherwise) in and to the Good Faith Deposit. Further, the Parties stipulate and agree that the Good Faith Deposit shall not be deemed to be property of the Seller, the Debtor, or any of their sucessors and assignes, including any estate in a bankruptcy proceeding, and that the Escrow Agent expressly holds the Good Faith Deposit in trust in accordance with this Agreement.

5.      **Closing.** Unless this Agreement is terminated pursuant to Section 15, and subject to satisfaction or written waiver of the condition set forth in Section 6, the closing of this sale (the "Closing") shall take place on the date that is _____ or such other date that the parties hereto shall mutually agree (the date on which the Closing, in fact, occurs, the "Closing Date") through the office of the Escrow Agent.

6.      **Closing Deliverables**.  At Closing, Seller, at Seller's sole cost and expense, shall deliver or cause to be delivered to the Escrow Agent or Purchaser, as directed by Purchaser, the following documents, all of which shall be properly authorized and executed by Seller and acceptable to Purchaser in its sole and absolute discretion:

(a)      the Trustee's Deed;

(b)      a certificate of non-foreign status to insure Seller's compliance with Foreign Investment in Real Property Tax Act ("FIRPTA") (Section 1445 of the Internal Revenue Code of 1986, as amended);

(c)      a Closing statement;

(d)      such affidavits, certifications and other documentation evidencing the authority of the person executing the Trustee's Deed and other documents on behalf of Seller in a form acceptable to the Escrow Agent;

(e)      an information reporting form for purposes of preparing an IRS Form 1099-S;

(f)      such affidavits and certificates satisfactory to Purchaser which address whether any taxes are due or should be withheld under the laws of the state in which the Real Property is located upon the sale of the Real Property;

(g)      if the Sale Order does not authorize a sale free and clear of all Encumbrances (other than Permitted Encumbrances) to the maximum extent permitted by Section 363 of the Bankruptcy Code, then to Purchaser, releases and termination statements with respect to all Encumbrances (other than Permitted Encumbrances) on the Real Property; provided,

however, nothing in this Section 7(g) shall obligate Purchaser to proceed to Closing if the Sale Order does not authorize a sale free and clear of all Encumbrances (other than Permitted Encumbrances) to the maximum extent permitted by Section 363 of the Bankruptcy Code; and

(h)      such additional affidavits, documents and instruments as the Escrow Agent may require to transfer Seller's interest in the Real Property pursuant to the terms of this Agreement, each of which shall be in form and substance reasonably satisfactory to the Escrow Agent and Purchaser.

7.    **Conditions to Closing**.

(a)      <u>Conditions Precedent to the Obligations of Purchaser and Seller</u>.   The respective obligations of each party to this Agreement to consummate the transactions contemplated by this Agreement are subject to the satisfaction or written waiver, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Seller and Purchaser, in whole or in part, to the extent permitted by applicable law):

(i)      no temporary restraining order, preliminary or permanent injunction or other order issued by any court of competent jurisdiction or other legal restraint or prohibition preventing the consummation of the transactions contemplated hereby shall have been issued, nor shall there be any statute, rule, regulation, order or other law promulgated, enacted, entered, or enforced which makes the consummation of the transactions contemplated by this Agreement illegal, void or rescinded; and

(ii)      the Bankruptcy Court shall have entered the Sale Order on the docket by the Clerk of the Bankruptcy Court, and such Sale Order (i) shall be in full force and effect, (ii) shall not be the subject of any stay, and (iii) if an appeal has been filed that challenges the Purchaser's good faith under Section 363(m) of the Bankruptcy Code or asserts that the transactions contemplated by this Agreement are avoidable pursuant to, or otherwise violate, Section 363(n) of the Bankruptcy Code, such appeal shall have been resolved so that the Sale Order is a final in all respects.

(b)      <u>Conditions Precedent to the Obligations of Purchaser</u>.   The obligations of Purchaser to consummate the transactions contemplated by this Agreement are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Purchaser, in whole or in part, to the extent permitted by applicable law):

(i)      (A) Each of the representations and warranties of Seller contained in this Agreement must be true and correct in all material respects as of the Closing with the same effect as though made at and as of the Closing; and (B) Seller shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by Seller on or prior to the Closing Date; and (C) Seller shall have delivered to Purchaser at Closing a certificate signed by an authorized officer of Seller, in form and substance reasonably satisfactory to Purchaser, confirming satisfaction of the conditions in clauses (A) and (B) above; and

(ii)      Seller shall have delivered, or caused to be delivered, to Purchaser

3

or the Escrow Agent, as applicable, all of the items set forth in <u>Section 6</u>.

8.      **Disposition of Good Faith Deposit.** In the event that Purchaser purchases the Real Property and the Sale is closed, then all Good Faith Deposit payments made by Purchaser pursuant to the terms of this Agreement shall be credited to and offset against the Purchase Price and paid to the credit of Seller at the Closing. Should Purchaser have the right to termiate this Agreement under <u>Section 15</u> and elects to do so, then this Agreement shall be considered terminated and the Good Faith Deposit promptly returned to Purchaser. Should Purchaser breach this Agreement under <u>Section 12</u> or under any other provision herein, the Good Faith Deposit shall be forfeited and become property of Debtor's estate.

9.      **Diligence Materials; No Diligence Contingency.** Purchaser acknowledges that Seller has provided to Purchaser all due diligence information pertaining to the Real Property (collectively, the "<u>Diligence Materials</u>"), including but not limited to, (i) a commitment for title insurance, together with instruments of record referred to in the title commitment; (ii) a survey obtained by Seller using the metes and bounds description of the survey to describe the Real Property covered thereby; (iii) a Phase 1 environmental survey; (iv) a property condition report and any supplemental information relating to the condition of the Real Property; and (v) full and sufficient access and opportunity to view, inspect and perform such examinations of the Real Property as necessary to determine the condition of the Real Property. Purchaser acknowledges that no further diligence or investigation of any kind is required to consummate the transactions contemplated in this Agreement.

10.     **No Executory Contracts or Unexpired Leases.** Seller represents and warrants to Purchaser, which representation and warranty shall be true and correct as of both the Effective Date and the Closing of the Sale, that no known executory contractors or unexpired leases related to the Real Propety exist.

11.     **Default of Seller.** If Seller fails to perform any of the covenants of this Agreement or otherwise fails to perform any obligations or breaches any representation or warranty hereunder, then Purchaser shall have the right to (i) terminate this Agreement pursuant to <u>Section 15(a)</u> and the return of the Good Faith Deposit paid by Purchaser, plus interest if any, or (ii) seek specific performance of the terms of this Agreement by Seller, the foregoing options being Purchaser's sole and exclusive remedies hereunder.

12.     **Default of Purchaser.** Should this Sale not be concluded because of the default of Purchaser, and should such default continue for a period of ten (10) days following Purchaser's receipt of written notice from Seller regarding such default, then the Good Faith Deposit shall be paid over to Seller as liquidated damages and not as a penalty, constituting a reasonable pre-breach estimate of Seller's probable damage which would otherwise be difficult to determine, and Seller shall be authorized to seek specific performance from Purchaser, the foregoing options being Seller's sole and exclusive remedies hereunder.

13.     **Proration of Taxes; Payment of Other Expenses.** Seller shall be responsible for any and all taxes and assessments, including any interest, penalties or fees, incurred prior to the Closing. Purchaser shall be responsible for all taxes and assessments accruing on and after the Closing. The Closing statement to be prepared by the Escrow Agent shall reflect such proration

4

based on the most recent and available tax rate and valuation.  Any other costs or expenses, if any, shall be allocated between and charged to Purchaser and Seller in accordance with Escrow Agent's usual practices.  Seller shall be responsible for the cost of the preparation and delivery of all documents to be furnished by Seller, including the cost of the commitment for issuance of a title insurance policy (with said costs to be reimbursed as part of the Purchase Price as per Section 2, above).  Purchaser shall be responsible for the cost of recording the deed and the cost of purchasing a title insurance policy. Each Party shall be responsible for its own attorneys' fees.  The Closing fee of the Escrow Agent will be split equally between the Purchaser and Seller.

14.  **Bankruptcy Court Matters**.

(a)    Notice of Sale; Bid Procedures.  Seller shall take the following actions, or shall cause them to occur, by the following deadlines:

(i)    Within ____ ( ) days after the Execution Date, Seller will file and serve a notice of the proposed Sale (the "Notice of Sale"), with the Bankruptcy Court, in form and substance consent with that previously approved by the Bankruptcy Court pursuant to that certain _____ [Dkt #__] (the "Bid Procedures Order"), requesting approval of the transactions contemplated hereby and entry of the Sale Order pursuant to the bidding procedures and timeline approved by and set forth in the Bid Procedures Order, incorporated by reference herein (the "Bid Procedures").

(ii)    In accordance with the Bid Procedures Order and the Bid Procedures approved pursuant thereto, in the event a Qualified Bid, other than the Stalking Horse Bid (as defined in the Bid Procedures), is timely received prior to the Bid Deadline, Seller will conduct an auction (the "Auction").

(iii)    In accordance with the Bid Procedures Order and the Bid Procedures approved pursuant thereto, in the event Purchaser's Qualified Bid is the only Qualified Bid submitted by the Bid Deadline (as defined in the Bid Procedures), Seller shall cancel the Auction and proceed to use its best efforts to obtain entry by the Bankruptcy Court of the Sale Order.

(iv)    If Purchaser is the Successful Bidder (as defined in the Bid Procedures), then Seller shall use its best efforts to cause the Closing to occur on or before the date that is _____, or such other later date as is mutually agreed by Purchaser and Seller in a writing dated prior to the date that is _____ (the "Outside Date").

(b)    Bid Procedures and Bid Protections Are Material Considerations to Purchaser.  Each and every provision of the Bid Procedures and Bid Protections (as described in the Bid Procedures), including without limitation Purchaser's right to the Breakup Fee (as set forth in Section 14(c)), and Seller's compliance with the provisions of Section 14(a), constitute material consideration to Purchaser under this Agreement.  The Parties acknowledge that Purchaser would not have entered into this Agreement without each and every provision within the attached Bid Procedures, including the Bid Protections described therein.  In the event the Bankrutpcy Court does not approve, or materially modifies, the Bid Procedures, or Seller fails to comply with the

5

provisions of Section 14(a), Purchaser may terminate this Agreement pursuant to <u>Section 15(a)</u>.

**(c)**    <u>Breakup Fee</u>.

**(i)**    In consideration for Purchaser's expenditure of time, energy and resources in performing due diligence and formulating its offer for the Real Property, and the benefit to the Estate created by Purchaser's willingness to submit an offer that will enable Seller's competitive sale process, in the event that this Agreement is terminated pursuant to <u>Section 15(a)</u>, Purchaser shall, in addition to the return of the Good Faith Deposit and subject to approval of the Bankruptcy Court, be entitled to a compensatory payment of $_____ (the "<u>Breakup Fee</u>").  In the event Seller becomes obligated to pay the Breakup Fee, the Breakup Fee shall be payable solely as follows: (a) from the proceeds of a closed sale of the Real Property to a Successful Bidder (as defined in the Bid Procedures), if the Purchaser is not the Successful Bidder or (b) from the forfeited Good Faith Deposit (as defined in Bid Procedures) of a Successful Bidder  if: (i) such Successful Bidder is not the Purchaser, (ii) such Successful Bidder does not close on a sale for the Real Property and forfeits its Good Faith Deposit under the terms of the Successful Bidder's Modified Purchase Agreement (as defined in the Bid Procedures), and (iii) the Purchaser is not the Backup Bidder (as defined in the Bid Procedures).

**(ii)**    Each Party to this Agreement acknowledges that the agreements contained in this <u>Section 14(c)</u> are an integral part of the transactions contemplated by this Agreement, that without these agreements such party would not have entered into this Agreement, and that any amounts payable pursuant to this <u>Section 14(c)</u> do not constitute a penalty.

**(d)**    <u>Bankruptcy Filings</u>.

**(i)**    Without limiting Seller's obligations under <u>Section 14</u>, (i) Seller shall undertake its best efforts to obtain entry of the Sale Order, and (ii) Seller shall timely take all actions required by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure necessary to permit Seller to consummate the transactions contemplated herein by the Closing Date.

**(ii)**    Seller shall deliver or cause to be delivered to Purchaser for review and comment, as soon as commercially reasonable and in any event not less than two (2) business days prior to the filing thereof, all documents to be filed on behalf of Seller with the Bankruptcy Court, including all motions, applications, petitions, schedules, and supporting papers prepared by Seller (including forms of orders and notices to interested parties) that relate to, or that may affect, the Real Property or the transactions contemplated hereby.  All motions, applications, petitions, schedules, and supporting papers prepared by Seller and relating to the transactions contemplated hereby or the Real Property to be filed with the Bankruptcy Court on behalf of Seller must be reasonably satisfactory in form and substance to Purchaser and Seller.

**(iii)**    Seller shall comply with all notice requirements (i) of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure in connection with any

pleading, notice or motion to be filed in connection herewith, or (ii) imposed by all agreements, stipulations, and orders of the Bankruptcy Court, now existing or hereafter arising.

**(iv)**    Purchaser reserves the right to approve the form of any Sale Order submitted to the Bankruptcy Court; however, at a minimum, the Sale Order shall, among other things, pursuant to Sections 105 and 363 of the Bankruptcy Code:

**(A)**    approve this Agreement and all related transactions;

**(B)**    find that the transfer of the Real Property is legal, valid, and enforceable and vests Purchaser with valid title to the Real Property, free and clear of all Encumbrances (except for Permitted Encumbrances);

**(C)**    authorize Purchaser to file, if desired in its discretion, terminations or cancellations of any recorded Encumbrances (except for Permitted Encumbrances or to the extent required by law) against the Real Property and require secured parties or lienholders, where required by applicable non-bankruptcy law or requested by Purchaser, to execute documents of release, cancellation or satisfaction prepared by Purchaser, to be filed by Purchaser to clear any Encumbrances of record (other than Permitted Encumbrances) from the Real Property;

**(D)**    find that the Purchase Price and other consideration provided by the Purchaser constitute a fair and reasonable price for the Real Property;

**(E)**    find that Purchaser is a good faith purchaser of the Real Property and entitled to the protections of Section 363(m) of the Bankruptcy Code;

**(F)**    find that Seller gave good and sufficient notice of the Sale to all persons and entities affected thereby;

**(G)**    find that Purchaser has not assumed, and has no responsibility or liability for any of Seller's liabilities of any description whatsoever, whether known or unknown as of the Closing, whether fixed or contingent, or whether existing at the time of or arising after the Closing, including successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, alter ego, successor or transferee liability, de factor merger, mere or substantial continuation;

**(H)**    provide for the immediate effect of the Sale after the Closing;

**(I)**    waive the 14-day appeal periods staying the Sale contemplated by this Agreement pursuant to FED. R. BANKR. P. 6004(h);

**(J)**    in the event an appeal is taken or a stay pending appeal is

requested, from the Sale Order, Seller shall immediately notify Purchaser thereof and shall provide Purchaser with a copy of the related notice of appeal or request for stay. Seller shall use its commercially reasonable efforts to defend such appeal or stay request at its own cost and expense and obtain an expedited resolution thereof; and

(K)    specifically reserve the Bankruptcy Court's jurisdiction to enforce the Sale Order and this Agreement.

15.    Termination.

(a)    <u>Termination of Agreement</u>. This Agreement may be terminated prior to Closing as follows:

(i)    by the mutual written consent of Seller and Purchaser at any time prior to the Closing;

(ii)    by Purchaser, if the Closing shall not have been consummated on or prior to the Outside Date;

(iii)    by Purchaser or Seller, if there shall be any law that makes consummation of the transactions contemplated hereby illegal or otherwise prohibited, or there shall be in effect a final non-appealable order of a governmental authority of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby;

(iv)    by Purchaser, if the Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code, or if a trustee other than the Trustee or an examiner with expanded powers to operate or manage the financial affairs or the liquidation of Seller is appointed in the Bankruptcy Case without immediately ratifying all terms and conditions applicable to Seller herein and proceeding in good faith to consummate a Closing by the Outside Date;

(v)    by Purchaser, if the Sale Order entered by the Bankruptcy Court does not reflect the requirements set forth in <u>Section 14(d)(iv)</u>;

(vi)    by Purchaser, if following entry of the Sale Order, the Sale Order shall (A) be the subject of a pending appeal which stays the Closing, (B) have been reversed or (C) have been modified or amended in any manner materially adverse to Purchaser without the prior written consent of Purchaser;

(vii)    by Purchaser, (i) if Seller shall have breached or failed to perform any of its representations, warranties, covenants or other agreements contained in this Agreement, or if any representation or warranty of Seller in this Agreement shall have become untrue; and (ii) any such breach, failure to perform or occurrence or the aggregate of all such breaches, failures to perform or occurrences referred to in clause (i) (A) would result in a failure of any condition set forth in <u>Section 7(b)(i)</u>, (B) is not curable or able to be performed, or, if curable or able to be performed, is not cured or performed to the

reasonable satisfaction of Purchaser prior to the earlier of (x) the Outside Date and (y) ten (10) days after written notice of such breach, failure or occurrence is given to Seller by Purchaser;

**(viii)**    by Seller, if (i) Seller enters into a definitive agreement with respect to a Qualified Bid that is not the Stalking Horse Bid, (ii) the Bankruptcy Court enters an order approving a Qualified Bid that is not the Stalking Horse Bid, and (iii) the Qualified Bidder making the Qualified Bid that is not the Stalking Horse Bid consummates the Qualified Bid;

**(ix)**    by Purchaser, at any time on or after the date that is five (5) business days following the hearing held by the Bankruptcy Court to consider the Sale Order (the "Sale Hearing"), if the Purchaser is not accepted as the Successful Bidder or the Backup Bidder; or

**(x)**    by Purchaser in the event that the requirements of Section 14(a) are not fulfilled within the timeframes established and set forth in the Notice of Sale.

**(b)**    Procedure Upon Termination.    In the event of a termination of this Agreement by Purchaser or Seller, or both of them, pursuant to Section 15, (a) written notice of such termination shall be given promptly by the terminating Party to the other Party hereto, specifying the provision hereof pursuant to which such termination is made, and (b) except as set forth in Section 15(d), this Agreement shall thereupon terminate and become void and of no further force or effect, and the consummation of the transactions contemplated by this Agreement shall be abandoned without further action of the Parties hereto; provided, however, notwithstanding anything contained in this Agreement to the contrary, such termination shall not relieve either Party hereto from liability for its breach of this Agreement prior to such termination.    Any termination of this Agreement by Purchaser or Seller, or both of them, pursuant to Section 15(a) shall be effective on the date that written notice of such termination is given by the terminating Party to the other Party hereto.

**(c)**    Effect of Termination.    If this Agreement is terminated pursuant to Section 15(a), this Agreement shall become void and of no further force or effect (except for the provisions of Section 15(d) (Distribution of Good Faith Deposit on Termination), Section 14(c) (Breakup Fee), Section 18 (Binding Effect), Section 19 (Assignment), Section 20 (Miscellaneous), and Section 21 (Notice), and Seller shall be free immediately to enjoy all rights of ownership of the Real Property and to sell, transfer, encumber or otherwise dispose of the Real Property to any Party without any restriction under this Agreement.

**(d)**    Distribution of Good Faith Deposit on Termination.    If this Agreement is terminated pursuant to Section 15(a), the Good Faith Deposit (together with all accrued interest thereon, if any) shall be paid to Purchaser, and Seller and Purchaser shall, within three (3) Business Days of termination, instruct the Escrow Agent to deliver the Good Faith Deposit (together with all accrued interest thereon, if any) to Purchaser.

16.    No Successor Liability.    The Parties intend that, upon the Closing of the Sale, to the fullest extent permissible under applicable law, Purchaser, and its successor and assigns, shall not

be deemed to: (a) be a mere continuation or substantial continuation of the Debtor or its business enterprise; or (b) be liable for any acts or omissions of Debtor in the conduct of its businesses or arising under or related to the Real Property, other than as set forth in this Agreement.  Without limiting the generality of the foregoing, and except as otherwise provided in this Agreement, the Parties intend that Purchaser shall not be liable for any liens, claims and Encumbrances against the Debtor or any predecessors or affiliates, and Purchaser shall have no successor or vicarious liability of any kind or character wehther known or unknown as of the Closing of the Sale, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Real Property or any liabilities of the Debtor arising prior to the Closing of the Sale. The Parties agree that the provisions substantially in the form of this Section 20 shall be reflected in the Sale Order.

17.   **Commission.**

(a)   B. Riley Real Estate, LLC ("B. Riley") has served as Seller's sole and exclusive broker and real estate agent in connection with the marketing and Sale of the Real Property.  Seller represents to Purchaser that it has dealt with no real estate agent or broker in connection with this Agreement and the Real Property except for B. Riley, and agrees to indemnify, hold harmless and defend Purchaser from any and all claims from all other real estate brokers, agents or other parties claiming to be entitled to a fee, commission or other compensation as a result of the execution of this Agreement or the Closing.

(b)   Purchaser represents to Seller that it has not utilized the services of any real estate agent or broker in connection with this Agreement and the Real Property. Should any claim for a commission be established by a broker, agent or finder, Purchaser expressly agrees to hold Seller harmless with respect thereto to the extent that Purchaser is shown to be responsible for the creation of such claim.

(c)   The provisions of this section shall survive the Closing and delivery of the Trustee's Deed.

18.   **Binding Effect.** This Agreement shall enure to the benefit of, and shall be binding upon each of the parties hereto, and their respective heirs, personal representatives, successors and assigns.

19.   **Assignment.**  Purchaser shall have the right to sell or assign, in whole or in part, this Agreement and its rights hereunder to an affiliate or related entity.  Seller may not assign, in whole or in part, this Agreement or its rights hereunder without the prior written consent of Purchaser.

20.   **Miscellaneous.**

(a)   The Parties hereto hereby agree that each Party and its attorneys have reviewed and revised this Agreement and that the normal rule of construction, to the effect that any ambiguities are resolved against the drafting party, shall not be employed in the interpretation of this Agreement and no other rule of strict construction shall be used against any Party.

(b)   Seller agrees that from the date of this Agreement until the date on which the Real

Property is conveyed to Purchaser, it will not commit or permit to be committed any waste or change in the condition or appearance of the Real Property, or convey any other right with respect to the Real Property except with the written consent and joinder of Purchaser.

(c) Seller agrees to assume the risk of loss or damage to the Real Property occurring on or before the date on which title thereof is conveyed to Purchaser. If, prior to its conveyance, all or any portion of the Real Property is the subject of a pending or contemplated taking by eminent domain which has not been consummated or if the Real Property has been materially damaged or destroyed, Seller shall notify Purchaser of such fact and Purchaser shall have the option to terminate this Agreement and, in the event Purchaser shall elect to terminate this Agreement, the Good Faith Deposit together with all interest earned thereon shall promptly be returned to Purchaser. If this Agreement is terminated and the Good Faith Deposit together with accrued interest is returned, as aforesaid, neither Party shall have any further rights or obligations hereunder. If, after receipt of Seller's notice, as aforesaid, Purchaser does not exercise its option to terminate this Agreement, the Parties hereto shall remain bound hereunder and Seller shall assign and turn over, and Purchaser shall be entitled to receive and keep, all awards for the taking by eminent domain described in said notice or all insurance proceeds payable as a result of such destruction or damage. In the event the time for performance of any obligation hereunder shall fall or expire on a day other than a business day, the time for performance of such obligation shall be extended to the next succeeding business day.

(d) For purposes hereof, a business day shall be any day other than Saturdays, Sundays and days on which banks are required or authorized to be closed.

(e) This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but which, when taken together, shall constitute but one Agreement. For purposes of executing this Agreement, a document signed and transmitted by electronic mail, with confirmation of receipt, is to be treated as an original document with original executed documents to follow. The signature of any Party thereon, for purposes hereof, is to be considered an original signature, and the document transmitted is to be considered to have the same binding effect as an original signature on an original document. At the request of any Party, any emailed document is to be re-executed in original form by the Parties who executed the emailed document. No Party may raise the use of electronic mail, a facsimile machine or telecopier or the fact that any signature was transmitted through the use of electronic mail, a facsimile machine or telecopier machine as a defense to the enforcement of this Agreement or any amendment or other document executed in compliance with this paragraph.

(f) Time is of the essence with respect to the performance of all of the covenants and other terms and conditions of this Agreement.

(g) This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the state in which the Real Property is located. In the event that any

condition or covenant herein contained is held to be invalid or void by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect any other covenant or conditions herein contained.  If such condition, covenant or other provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope or breadth permitted by law.

21.    **Notice**.  Any notice, delivery or demand shall be given by one party to the other by overnight carrier sent "next business day service", or by mail deposited in the United States mail, postage prepaid, certified, return receipt requested, addressed to the other party at their respective addresses as follows:

If to Purchaser:         ___
                         ___
                         ___
                         ___

With a copy to:          __
                         __
                         __
                         ___
                         __

If to Seller:            Derek A. Henderson
                         **Derek Henderson, Attorney at Law**
                         1765-1 Lelia Drive, Suite 103
                         Jackson, Mississippi 39216
                         Email: derek@derekhendersonlaw.com

With a copy to:          Douglas C. Noble
                         **McCraney | Montagnet | Quin | Noble PLLC**
                         602 Steed Road • Suite 200
                         Ridgeland, Mississippi 39157
                         Email:  dnoble@MMQNLaw.com

The above addresses and information may be changed from time to time by written notice to the other party in the manner provided herein.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed by their respective authorized representatives, as applicable, as of the Execution Date.

SELLER:

**UNITED FURNITURE INDUSTRIES, INC./
UNITED FURNITURE INDUSTRIES NC, LLC**

By:_____
       Derek Henderson, Chapter 11 Trustee

PURCHASER:

_____

By:_____

## EXHIBIT A

The Real Property