**108011**
**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

| | |
|---|---|
| IN RE: | Case No. 22-13422 – SDM |
| **UNITED FURNITURE INDUSTRIES, et al.**[1] | Chapter 11 |
| **Debtors.** | Jointly Administered |

**LIMITED OBJECTION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CHAPTER 11 TRUSTEE'S *NOTICE OF (I) SALE OF REAL PROPERTY, (II) DESIGNATION OF STALKING HORSE PURCHASER, (III) BID PROCEDURES, DATES AND TIMELINE FOR AUCTION, AND (IV) SALE HEARING TO APPROVE SALE, PAYMENT OF REAL ESTATE COMMISSION AND RELATED RELIEF* [P-612]**

The Official Committee of Unsecured Creditors (the "Committee") files this Limited Objection (the "Limited Objection") to the *Notice of (I) Sale of Real Property, (II) Designation of Stalking Horse Purchaser, (III) Bid Procedures, Dates and Timeline for Auction, and (IV) Sale Hearing to Approve Sale, Payment of Real Estate Commission and Related Relief* [P-612] (the "Notice") filed by Derek Henderson, the Chapter 11 Trustee (the "Trustee"). First, the Committee wishes to commend the Trustee for his efforts to market and sell the properties and to obtain a stalking horse bidder for an *in globo* sale of properties owned by the jointly administered debtors. The Committee and Trustee, through counsel, have had (and hopefully will continue to have) constructive conversations regarding the progress of marketing efforts. Nevertheless, while the

---

[1] The Debtors in these Chapter 11 cases, and the last four digits of each Debtor's federal tax identification number, are as follows: United Furniture Industries, Inc. (2576); United Furniture Industries NC, LLC.(9015); United Furniture Industries CA, Inc. (9966); FW Acquisition, LLC (2133); Furniture Wood, Inc. (9186);United Wood Products, Inc. (1061); Associated Bunk Bed Company (0569); UFI Royal Development, LLC (8143); UFI Exporter, Inc. (6518); UFI Transportation, LLC (9471); and LS Logistics, LLC (7004).

Committee is generally supportive of the Trustee's efforts, the Committee is concerned with the allocation of sales proceeds between the subject properties being sold, and out of an abundance of caution, for the reasons described herein, the Committee files this Limited Objection.

### The Bid Procedures Order

On May 19, 2023, this Court entered an *Order (A) Establishing Bidding Procedures Relating to Sales of Real Property; (B) Scheduling an Auction and Hearing to Consider Proposed Sales; (C) Approving Proposed Sales; and (D) Granting Related Relief* [P-568] (the "Bid Procedures Order"). Pursuant to the Bid Procedures Order, the Trustee may designate a Stalking Horse Purchaser.[2] If the Trustee selects a bidder to act as stalking horse, the Trustee is to file a notice, and this Court may approve the potential purchaser as a Stalking Horse Purchaser "absent objection to the Stalking Horse Purchaser and Bid Protections afforded the Stalking Horse Purchaser by the attendant deadlines set forth in the Notice of Sale."[3]

### The Trustee's Notice and Related Documents

On June 20, 2023, the Trustee filed the Notice designating Phoenix Acquisition LLC ("Phoenix") as a Stalking Horse Purchaser and attaching copies of the approved Bid Procedures[4] as well as the proposed Stalking Horse Purchase Agreement[5] between the Trustee and Phoenix. Under the Bid Procedures attached to the Notice, a Stalking Horse Purchase Agreement may contain a break-up fee in favor of the Stalking Horse Purchaser, along with "other exclusive rights protections and privileges afforded the Stalking Horse Purchaser."[6] The break-up fee and the

---

[2] *See*, P-568, p.5, ¶ 1.

[3] *Id*. at ¶ 2.

[4] *See*, P-612-1 (Exhibit A to Notice, Bid Procedures).

[5] *See*, P-612-2 (Exhibit B to Notice, Stalking Horse Purchase Agreement).

[6] *See*, P-612-1, Sec. (5).

Page | 2

rights, protections and privileges granted under the Stalking Horse Purchase Agreement collectively form the Stalking Horse Purchaser's "Bid Protections"[7] within the meaning of the Bid Procedures Order, the Bid Procedures, the Notice and the Stalking Horse Purchase Agreement. In turn, the Bid Procedures Order and Notice require objection to any Bid Protections to be made timely, and the Notice fixes the deadline for such objections as June 26, 2023 at 5:00 p.m., CDT.[8]

Turning to the Stalking Horse Purchase Agreement, Section (2) provides that "[t]he Purchase Price shall be allocated among the individual parcels of the Real Property by agreement between Seller and Purchaser following entry of the Sale Order but prior to Closing."[9] Further, the Stalking Horse Purchase Agreement provides that the ultimately to-be-agreed-upon allocation will allocate at least the sum of (a) $19 million to the Mississippi parcels, less the Vardaman Property (as defined), plus the High Point, North Carolina property, (b) $500,000.00 to the Vardaman Property, and (c) $27 million to the three remaining North Carolina properties.[10]

### The Committee's Concerns

The Committee has three, somewhat related, concerns: (i) whether an allocation of sales proceeds of multiple parcels of real property between such properties constitutes a "Bid Protection" for which an objection must be filed on or before June 26, 2023; (ii) whether this Court should approve of unfettered allocation authority without reservation of further ability to review and approve of the allocations ultimately agreed upon by the Trustee and Phoenix; and (iii) whether

---

[7] *Id.*

[8] *See*, P-568, p. 5, ¶ 2; *see also*, P-612, p.2.

[9] *See*, P-612-2, p. 2, Sec (2).

[10] *Id.*

Page | 3

the minimum allocations set forth in the Stalking Horse reflect proper allocation of value between the real properties and the separate bankruptcy estates which own such properties.

### The Importance of Allocation

It must be remembered that while these bankruptcy cases are jointly administered, they are not substantively consolidated.  Each bankruptcy estate has its own pot of assets and own creditor constituency.  While the proposed sale covers properties owned by multiple debtor entities, the question of how proceeds from the sale should be allocated is a key concern.  Designation of the amount for which each property is being sold affects the waterfall, or flow-through, to unsecured creditors in a substantial way.  For instance, a high value allocation could be assigned to a property without regard to underlying actual value simply because a high amount is needed to clear off mortgages and other encumbrances on such property.  In such a situation, while a high allocation might obviate issues under 11 U.S.C. § 363(f), it may denude the value attributable to other properties held by other debtors (and correlatively lessen any potential unsecured creditor recovery from the sale of such properties).  Allocation of sales price in excess of real, underlying value of property sold has the potential to improperly benefit the creditors of one estate to the detriment of the others.  Thus, allocation of sales proceeds amongst the various properties is a key concern for the Committee and its constituents.[11]

The Committee believes that issues and disputes over any ultimate allocation are probably best suited for final hearing approving any sale.  And further, it is possible that the present Stalking Horse Purchaser is not the purchaser ultimately selected after auction of the property. Nevertheless, the term "Bid Protection" is loosely defined to mean any right, privilege or

---

[11] *See*, *In re LTV Steel Co., Inc.*, 285 B.R. 259, 267 (Bankr. N.D.Ohio 2002) ("Courts allocate sale proceeds between individual assets based upon each asset's portion of the total value of all of the assets."); *see also*, *In re Vantex Land & Dev. Co.*, 47 B.R. 261, 265 (Bankr. D. Ariz. 1985) (same).

Page | 4

protection under the Stalking Horse Purchase Agreement.[12] Whether the allocation of sales proceeds is a "Bid Protection" is a somewhat indistinct question. Perhaps Phoenix views the right to determine how much it is paying for each property as a "right" or "privilege" under the Stalking Horse Purchase Agreement; perhaps that is not the case and the allocation issue is a determination solely made by the Trustee. However, if the ability to allocate, or come to agreement with the Trustee on allocation without further court supervision is a "Bid Protection" the Committee is forced, out of an abundance of caution, to raise this issue now.

### This Court Should Reserve Authority to Review and Approve any Final Allocation

If allocation rights are considered Stalking Horse Purchaser Bid Protections, this Court should reserve some mechanism for creditors and this Court to review any ultimate allocation between parcels and bankruptcy estates. Approval of unfettered authority to allocate as the Trustee and Phoenix sees fit at some later date strips away the ability of creditors to meaningfully participate in the sale process and present any argument against a proposed, but not-yet-fixed, future allocation.[13] This inability to later request that this Court review allocation decisions affecting multiple bankruptcy estates is quite concerning to the Committee. Again, the Committee believes that allocation issues should come to a head when allocations are finally determined – which, according to the Stalking Horse Purchase Agreement, will not be until some later undefined date. But, without preserving the right to object at such later date by objecting now, the Committee fears it will be left without any say in the matter when the allocations are finally determined.

---

[12] *See*, P-612-1, Sec. (5).

[13] *See* n. 11, *supra*.

Page | 5

### This Court Should Not Approve the Proposed Minimum Allocations

According to the Stalking Horse Purchase Agreement three of the four North Carolina properties shall be allocated a minimum of $27 million of the purchase price, while most of the Mississippi properties and the remaining North Carolina property in High Point will be allocated a minimum of $19 million.[14]  The Committee is concerned regarding these allocations as no information is given regarding the basis for making these proposed minimum allocations.  The Committee can surmise that the $27 million granted to the three North Carolina properties is made to satisfy the first mortgage lien on those properties.  But the Committee is concerned that the allocation overstates the real market value of the mortgaged North Carolina properties at the expense of the remaining properties.  Certainly, the Committee recognizes that these are minimum and not final allocations.  Thus, the remaining $16,875,000 could be wholly allocated to the non-North Carolina properties, or some sizeable portion of the remaining bid amount could be so allocated.  But the Committee does not possess enough information to gauge the basis for the proposed minimum allocation or the fairness thereof.  And the Committee is concerned that without some justification for the proposed minimum allocation, this Court cannot informatively determine that the proposed sale is in the best interests of the jointly administered (but not substantively consolidated) bankruptcy estates or that the Trustee's business judgment in relation to the allocation is sound.[15]

---

[14] The remaining Mississippi property in Vardaman shall have a minimum allocation of $500,000.

[15] *See*, *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) ("A sale of assets under § 363, as implemented by rule 6004, requires notice and a hearing and is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons.").

**Conclusion**

Again, the Committee believes the allocations are more properly a concern for final hearing. However, under the circumstances, the Committee believes it is compelled to voice these concerns now. It is the Committee's hope that it can work with the Trustee and proposed Stalking Horse Purchaser to allay its concerns or perhaps reserve rights to assert issues relating to the ultimate allocation of proceeds amongst the various properties until such time as a final bid is selected and/or final hearing to approve sale is conducted.

For the reasons expressed herein, the Committee asserts this limited objection to approval of the Stalking Horse Purchase Agreement.

Dated: June 26, 2023	Respectfully Submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**
301 Main Street, Suite 1640
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Facsimile: (225) 709-9467

/s/ *Paul Douglas Stewart, Jr.*
Paul Douglas Stewart, Jr. (La. Bar # 24661)
dstewart@stewartrobbins.com
*Pro Hac Vice Granted*
Brandon A. Brown (LA Bar # 25592)
bbrown@stewartrobbins.com
*Pro Hac Vice Granted*
Brooke W. Altazan (MS Bar # 105086)
baltazan@stewartrobbins.com
Nicholas J. Smeltz (LA Bar # 38895)
nsmeltz@stewartrobbins.com
*Pro Hac Vice Granted*
**Counsel for the Official Committee of Unsecured Creditors**

**CERTIFICATE OF SERVICE**

    I hereby certify that, on this 26th day of June 2023, a true and correct copy of the above and foregoing pleading, was caused to be served upon all parties that are registered to receive electronic service through the court's ECF notice system in the above case.

*/s/ Paul Douglas Stewart, Jr.*
Paul Douglas Stewart, Jr.